Dominick **ATTANASIO Jr.**, Plaintiff,

v.

**DIVISION OF COMPLIANCE, OFFICE OF HEALTH MAINTENANCE ORGANIZATIONS OF THE U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, and Secretary of Health and Human Services, Defendants.**

**Civ. A. No. 86–0071–F.**

United States District Court,
D. Massachusetts.

Jan. 16, 1990.

Thomas J. Oppenheimer, Springfield, Mass., for plaintiff.

Nicholas C. Theodorou, Asst. U.S. Atty., Boston, Mass., for defendants.

MEMORANDUM AND ORDER

FREEDMAN, Chief Judge.

## I. INTRODUCTION

Before the Court are plaintiff's motion for partial summary judgment and defendants' motion to dismiss. In essence, plaintiff contends that certain regulations promulgated by the Secretary of Health and Human Services ("Secretary") are invalid, and that plaintiff is entitled to judgment as a matter of law. Defendants, however, aver that the Secretary acted beyond his statutory authority by creating the regulations, and that plaintiff's complaint fails to state a claim upon which relief can be granted.

An Act of Congress provides, *inter alia,* that in accordance with the Secretary's regulations, an employer must offer as a part of its employee health benefits plan the option of joining a health maintenance or-

ganization ("HMO"). The Secretary's regulations, promulgated under the Act, state that an employer is obligated to offer the HMO option to its employees only if the employer receives from the HMO a written request for inclusion. The issue presented in this case is whether the Secretary's regulation is arbitrary, capricious or an abuse of discretion.

## II. FACTS

Plaintiff Dominick Attanasio Jr. is employed by the Laurino Packaging Corporation of West Springfield, Massachusetts ("Laurino"). As do many employers, Laurino extends to its employees the opportunity to enroll in a health benefits plan. In July of 1984, Laurino offered its employees, including plaintiff, the option of enrolling in either the Blue Cross/Blue Shield health plan or the Medical West health maintenance organization. Plaintiff chose Medical West. The Medical West coverage became effective on August 1, 1984. However, Laurino terminated the Medical West coverage on November 1, 1984, and informed all employees that those previously covered by Medical West would be transferred to Blue Cross/Blue Shield.

In response to the termination, plaintiff filed a complaint with the Division of Compliance, Office of Health Maintenance Organizations ("Division"), an agency of the United States organized under the Department of Health and Human Services responsible for enforcing the provisions of the Health Maintenance Organization Act of 1973, Pub.L. No. 93–222, 42 U.S.C. §§ 300e et seq. ("Act"). Plaintiff argued that Laurino's termination of the Medical West option for its employees violated Laurino's obligation under the Act, as amended

by Section 110 of Title I of the Health Organization Act Amendments of 1976, Pub.L. 94–460, 42 U.S.C. § 300e–9 ("section 300e–9"), to offer an HMO health plan option to its employees. In a two-page letter, the Division denied plaintiff's complaint. The Division based its decision on regulations[1] promulgated by the Secretary pursuant to the Act, which required that the employer receive from the interested HMO[2] a written request for inclusion before the employer has any obligation under the statute. Upon contacting a Medical West executive, the Division discovered that Medical West did not send a written request for inclusion to Laurino, see Letter from Christine C. Boesz, Deputy Director at the Division of Compliance, to Plaintiff's Attorney Thomas J. Oppenheimer at 2 (Jan. 23, 1986) ("Boesz Letter"), and that Laurino therefore did not receive one.[3] "Therefore, unless Laurino Packaging Corporation has received a timely written request from Medical West Community Health Plan and the corporation has met the other requirements of 110.802 [42 C.F.R. § 417.151], neither the provisions of 42 U.S.C. 300e–9 nor 42 CFR § 110.801 [section 417.150] et seq., apply." Boesz Letter at 1.

On February 26, 1986, plaintiff filed a complaint in United States District Court against the Division and the Secretary. Plaintiff makes three claims for relief. In his first claim for relief, plaintiff seeks a declaratory judgment stating that the Division's decision is erroneous and without force of law, because it is based on regulations contrary to section 300e–9. In his third claim, plaintiff avers that the Secretary's regulation requiring a written re-

---

1. When plaintiff commenced this action in 1986, the Secretary's regulations pursuant to section 300e–9 were codified at 42 C.F.R. §§ 110.801 et seq. However, the Secretary redesignated the regulations on September 30, 1987. 52 Fed.Reg. 36746. Today, the regulations at issue in this action can be found at 42 C.F.R. §§ 417.150 et seq. In this Memorandum and Order, the Court will cite to the regulations as redesignated.

2. By "interested HMO," the Court means any HMO (1) qualified by the Secretary pursuant to

42 C.F.R. §§ 417.140 et seq., and (2) wishing to have its services offered to eligible employees as part of an employer's health benefit plan.

3. Plaintiff disputes this point. In paragraph eight of his complaint, plaintiff contends that "Blue Cross/Blue Shield and/or Medical West submitted a written proposal to Laurino for the incorporation of Medical West into its health benefits plan." The Court gives further consideration to this factual dispute at pages 817–18, infra.

quest of inclusion is contrary to congressional intent as expressed in section 300e–9. Plaintiff contends that the Court must declare sections 417.150 *et seq.* invalid to the extent that they provide that section 300e–9 and the regulations apply only where the employer has received a written request for inclusion from the interested HMO.

Plaintiff's second claim for relief is in the alternative. If the Court should find that the regulations are valid and that the Division's reliance on the regulations is well-placed, then plaintiff asks the Court to remand the case to the Division for further investigation into the issue of whether Laurino actually received a written request for inclusion from Medical West.

Plaintiff has moved for summary judgment as to the first and third claims for relief. Plaintiff argues that because the regulation is on its face invalid, and the Division admittedly relied on those regulations, plaintiff is entitled to judgment as a matter of law. Defendants have moved to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(6),[4] based on their contention that the regulations are valid exercises of statutory authority granted to the Secretary by Congress, and that the Division correctly applied the statute and the regulations in this instance. Defendants also contend that the Division correctly investigated the matter regarding the written request for inclusion. Plaintiff's motion for partial summary judgment and defendants' motion to dismiss are now before the Court.

## III. DISCUSSION

### A. *Issue Definition*

Title 42 U.S.C. § 300e–9, entitled "Employee's health benefits plans," provides

that "(a) [i]n accordance with regulations which the Secretary shall prescribe ... each employer which is now or hereafter required ... to pay its employees the minimum wage ... and which during any calendar quarter of the previous calendar year employed an average number of employees of not less that 25 ... shall include in any health benefits plan ... the option of membership in qualified [5] health maintenance organizations....." [6] Thus, the statute empowers the Secretary to promulgate regulations in order to administer and enforce obligations under the statute.

Pursuant to section 300e–9, the Secretary created 42 C.F.R. §§ 417.150 *et seq.* Section 417.151 provides that an employer is subject to the regulations promulgated under section 300e–9 only if the employer "(1) Offers ... a health benefits plan to its eligible employees; and (2) Has received *written request for inclusion* in the employer's ... health benefits plan ... from one or more qualified HMOs...." (Emphasis added). Section 417.152(e) further provides that "[i]f the request for inclusion does not meet the requirements of paragraphs (a) through (c) of this section [regarding the nature and content of the written request], the employing entity is not required to include the HMO alternative in its employees' health benefits plan...." The issue now before the Court is whether the regulations are a valid exercise of administrative power; that is, may the Secretary make application of section 300e–9 and the attendant regulations contingent upon receipt by the employer of a written request for inclusion from the interested HMO?

The Supreme Court has not decided any case involving section 300e–9 or 42 C.F.R.

---

**4.** Rule 12(b)(6) provides in relevant part that "the following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted...."

**5.** As provided in section 1310(d) of the Act, 42 U.S.C. § 300e–9(d),

the term "qualified health maintenance organization" means (1) a health maintenance organization which has provided assurances satisfactory to the Secretary that it provides ba-

sic and supplemental health services to its members in the manner prescribed by section 1301(b) [42 U.S.C. § 300e(b) ] and that it is organized and operated in the manner prescribed by section 1301(c) [42 U.S.C. § 300e(c) ]....

**6.** Section 300e–9(a) has been referred to as a dual choice provision because its application would require an employer to offer its employees the choice between traditional health benefits and HMO health coverage.

§§ 417.150 *et seq.* The parties have cited no binding or persuasive case law regarding the Secretary's powers under section 300e–9. Indeed, no federal court in any circuit has considered the issue presently at bar. Absent such authority, the Court embarks on an uncharted course.

### B. Standard of Review

Title 5 U.S.C. § 706 provides that "[t]he reviewing court shall ... (2) hold unlawful and set aside agency action, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...." The arbitrary and capricious standard requires that the reviewing court give considerable deference to the agency determination. *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). The courts must allow an agency leeway in interpreting the statutes, because the agency, and not the court, has been empowered by Congress to set the statutory machine in motion, and make the parts work efficiently. *Id.* "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Manufacturers Ass'n. v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1982). Under the arbitrary and capricious standard, the Court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Bowman Transportation, Inc. v. Arkansas–Best Freight System, Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974), *citing Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). A reviewing court is "constrained to affirm the Secretary's determination ... in close cases." *McInnis v. Weinberger*, 530 F.2d 55, 63 (1st Cir.1976).

However, reviewing courts will not simply "rubber-stamp" the agency rule. *National Labor Relations Board v. Brown*, 380 U.S. 278, 291, 85 S.Ct. 980, 988, 13 L.Ed.2d 839 (1965). Rather, the court must "honor the clear meaning of the statute, as revealed by its language, purpose, and history." *Teamsters v. Daniel*, 439 U.S. 551, 566 n. 20, 99 S.Ct. 790, 800 n. 20, 58 L.Ed.2d 808 (1979). In the present case, the Court will consider sections 417.150 *et seq.* in light of the precise language of section 300e–9 and the relevant portions of the legislative history.

### C. The Health Maintenance Organization Act

■ Legislative history shows that the HMO Act had two central purposes. First, the Act was designed "to provide assistance and encouragement for the establishment and expansion of health maintenance organizations...." S.Rep. No. 129, 93rd Cong., 1st Sess., *reprinted in* 1973 U.S. Code Cong. & Admin.News 3033. Thus, the federal government authorized grants, loans, loan guarantees and other financial inducements in an effort to assist persons wishing to construct and operate HMOs. *Id.* at 3036. *See e.g.*, 42 U.S.C. § 300e–4 ("Loans and loan guarantees for initial operation costs").

Second, the Act was designed to make available to middle and working class Americans the option of membership in an HMO. "[T]he goal of this legislation is to increase the [health care] options from the point of view of the consumer...." 1973 U.S.Code Cong. & Admin.News at 3039. In passing the Act, Congress clearly hoped that HMOs would assume a larger and more important role in providing health care to the nation. Noting that "HMO enrollees receive high quality care at a lower cost—as much as one-fourth to one-third lower than traditional care in some parts of this country," 1973 U.S.Code Cong. & Admin.News at 3034, Congress hoped to encourage more Americans to choose the cost-efficient HMO option by making HMOs available throughout the United States. The Committee on Labor and Public Welfare noted that President Nixon, in his health messages to the nation in 1971 and 1972, endorsed the concept of an HMO health plan option for most Americans. The President said: "'I do not believe that HMOs should or will entirely

replace fee-for-service financing. But I do believe that they ought to be everywhere available so that families will have a choice between these methods.' The Committee agrees with the President." 1973 U.S.Code Cong. Admin.News at 3034.

It appears, however, that Congress understood that administration of the Act would be a task too burdensome for Congress alone. Congress delegated to the Secretary of Health and Human Services [7] the duty of administering the Act. Thus, under the Act, the Secretary has the power to: (i) qualify those HMOs that wish to be included in an employer's health benefit plan, section 300e–9(c); (ii) assess civil fines against employers who fail to comply with the Act under certain circumstances, section 300e–9; (iii) regulate the quality of health care benefits provided by qualified HMOs, section 300e(b); (iv) decide which HMOs will receive federal grants, loans, or loan guarantees, section 300e–4 through section 300e–7; and (v) otherwise police obligations under the Act. *See* H.R.Rep. No. 518, 94th Cong., 2d Sess. 15, *reprinted in* 1976 U.S.Code Cong. & Admin.News 4312, 4325–26; 42 U.S.C. §§ 300e *et seq.*

No language in the Act or the legislative history clearly states that the Secretary may or may not make obligations under section 300e–9 contingent upon the receipt by the employer of a written request for inclusion. However, the legislative history and the text of the Act and its amendments indicate that Congress intended to invest in the Secretary a considerable amount of discretion for determining under what circumstances employers and HMOs would be subject to the demands of section 300e–9. In light of this evidence, the Court cannot find that the requirement for a written request for inclusion is arbitrary and capricious, or that the Secretary committed a clear error of judgment by promulgating or enforcing the regulations. Rather, the Court finds that the Secretary's requirement that an employer receive a written request for inclusion from an interested HMO is consistent with Congress' broad grant of discretion. The Court believes

that today's decision is correct for three reasons.

First, the Court notices the language of section 300e–9. The Court assumes, as it must, that the words chosen by Congress were chosen on purpose. "[T]he admitted rules of statutory construction declare that a Legislature is presumed to have used no superfluous words." *Platt v. Union Pacific R.R. Co.,* 99 U.S. 48, 58, 25 L.Ed. 424, 427 (1879). This Court is obliged, in construing section 300e–9, "to give effect, if possible, to every word Congress used." *Reiter v. Sonotone Corp.,* 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1978). In the first sentence of section 300e–9, Congress wrote that the statute applies "[i]n accordance with regulations promulgated by the Secretary...." This language must mean that obligations under the statute shall be determined in a manner consistent with the Secretary's administrative needs. The Court cannot ignore this statutory language, especially when the Secretary has been vested with broad discretion throughout the entire Act. *See, e.g.,* section 300e–5 (granting Secretary broad discretion in approving HMO loan applications); section 300e–9(d) (granting Secretary broad discretion in determining HMO qualification).

Second, the legislative history of the Health Maintenance Organization Amendments of 1976 indicates that Congress foresaw and, in fact, approved of the requirement that an HMO must request inclusion in order to be included in an employer's health benefits plan.

Employee Health Benefits Plans (Dual–Choice)

The existing law requires employers, subject to the Fair Labor Standards Act who employ more than 25 employees and offer them a health benefits plan, to offer their employees the option of joining a qualified HMO if such HMO exists in the community in which the employees reside, *and if the HMO requests the inclusion.*

---

**7.** Known in 1973 as the Secretary of Health, Education and Welfare.

1976 U.S.Code Cong. & Admin.News at 4324 (emphasis added). Congress did not say that the request must be in writing. However, the Court finds that the Secretary acted within his authorized discretion in imposing such a requirement.

Case law also supports the notion that an employer must receive a request for inclusion from an interested HMO before the mandates of a dual choice provision apply. The United States District Court in Rhode Island has had opportunity to comment on a provision in the Rhode Island General Laws that was modeled after section 300e–9. There, then-District Judge Selya stated that "the dual option provision would only be activated when and if a request for inclusion was addressed to a particular employer." *Blue Cross of Rhode Island v. Cannon*, 589 F.Supp. 1483, 1492 (D.R.I. 1984) (considering R.I.Gen.Laws § 27–41–27). Chief Judge Boyle reaffirmed this reasoning four years later. *Ocean State Physicians Health Plan v. Blue Cross of Rhode Island*, 692 F.Supp. 52, 57 (D.R.I.1988) (considering R.I.Gen. Laws § 27–41–27).

These cases, of course, have no binding effect on this Court. However, they do corroborate the Court's conclusion that the mandates of a dual choice provision are triggered only when an employer receives a request for inclusion from an HMO. Once the Court decides that request for inclusion is necessary, it is not at all unreasonable to assume that those responsible for enforcing and administering the statutory provisions have the authority to require that the request be in writing.

Third, upon reading the regulations, the Court can find that the written request for inclusion serves important administrative and managerial functions. The written request assures that the employer will receive information regarding the HMO, such as whether the HMO has been qualified by the Secretary, what service area the HMO covers, which medical professionals work for the HMO, which hospitals offer HMO services, and so forth. Section 417.152(c). The written request serves as formal notice to the employer that an HMO desires inclu-

sion in the employer's health benefits plan. The HMO must also file the written request within the time frame prescribed by the Secretary. This requirement gives the employer an adequate amount of time to prepare for the inclusion of the HMO into the employer's health benefits plan. Thus, the written request must be received "not more that [than] 365 days and not less than 180 days before the expiration or renewal date of a health benefits contract or employing entity-employee contract ... [or] collective bargaining agreement...." Section 417.152(a).

In short, the Secretary's decision to require written requests for inclusion is not arbitrary and capricious. The Court holds that the Secretary's regulations at 42 C.F.R. §§ 417.150 *et seq.* are valid exercises of statutory power. The Court also holds that the Division's determination as to Laurino's obligations under the Act, as articulated in the Boesz Letter, is valid and in accordance with existing law. Thus, plaintiff's motion for summary judgment on his first and third claims for relief is denied, and defendant's motion to dismiss as to the first and third claims is granted.

Consequently, the Court finds, based on the reasons stated above, that 42 U.S.C. § 300e–9 imposes an affirmative obligation on the employer to offer HMO option to employees only if the HMO has complied with the regulations as promulgated by the Secretary. Thus, an employer has no obligation under the statute unless the procedures prescribed by the Secretary at 42 C.F.R. §§ 417.150 *et seq.* have been followed.

■ Plaintiff, in his second claim for relief, argues that the Division did not adequately investigate the issue of whether Laurino actually received a written request for inclusion from Medical West. Plaintiff states in his complaint that "Blue Cross/Blue Shield and/or Medical West submitted a written proposal to Laurino for the incorporation of Medical West into its health benefits plan." Plaintiff's Complaint ¶ 8 (February 26, 1986). Curiously, plaintiff has offered no evidence on this question. Neither has he alleged the exist-

ence or likely future production of such evidence. Nevertheless, plaintiff asks this Court to remand the issue to the Division for further investigation.

Defendant rejoins that the Division investigated properly and sufficiently, in that the Division "contacted an executive at Medical West Community Health Plan who stated that it is not a practice of Medical West to request inclusion in an employer's health benefits plan under the Federal provisions and this policy applies to Laurino Packaging Corporation." Boesz Letter at 2. Defendant has also produced the affidavits of Ms. Betty Ball, the Employer Compliance Specialist at the Office of Health Maintenance Organization, and Mr. Ronald L. Hemmelgarn, the Regional Executive Director of Medical West. Both affidavits state unequivocally that Medical West does not make formal written requests for inclusion under federal law. Faced with this documentation, the Court sees no value in remanding to the Division the question of whether Laurino received a written request for inclusion from Medical West. It is highly doubtful that any further investigation could uncover evidence that Laurino actually received a written request. Therefore, the Court refuses to remand the case to the Division for further investigation. The Court hereby grants defendants' motion to dismiss as to plaintiff's second claim for relief.

## IV. CONCLUSION

For the reasons stated above, the Court hereby GRANTS defendants' motion to dismiss as to the entire complaint. Plaintiff's motion for partial summary judgment is thus, by force of logic, DENIED.

It is So Ordered.