Alfred P. REEVES, Plaintiff–Appellant,

v.

CONTINENTAL EQUITIES CORPORATION OF AMERICA and Continental Corporation, Defendants–Appellees.

No. 1194, Docket 90–7010.

United States Court of Appeals, Second Circuit.

Argued April 16, 1990.
Decided Aug. 20, 1990.

Stanley Futterman, New York City (Eikenberry Futterman & Herbert, New York City), for plaintiff-appellant.

Alan M. Koral, New York City (Vedder, Price, Kaufman, Kammholz & Day, New York City) (Marc S. Wegner, of counsel), for defendants-appellees.

Before PRATT and MINER, Circuit Judges, and RE, Judge.*

RE, Chief Judge:

Plaintiff-appellant, Alfred P. Reeves, appeals from a judgment of the United States District Court for the Southern District of New York (Duffy, J.) which granted the motion of defendants-appellees, Continental Equities Corporation (Continental) and its parent, Continental Corporation, to dismiss a claim for damages under section 48(b) of the Investment Company Act of 1940 (the ICA) and three pendent state claims. The court also granted Continental's motion for summary judgment on a claim under the Employee Retirement Income Security Act of 1974 (ERISA).

Reeves, the former chief compliance officer of Continental, filed suit after being discharged from employment. Reeves alleged that he was discharged for attempting to conduct an investigation of alleged violations of federal securities laws by Continental, and sought damages under an implied cause of action under section 48(b) of the ICA. Reeves also alleged pendent state claims, under New York law, for wrongful discharge, severance benefits, and unreimbursed business expenses, and sought severance benefits under an ERISA claim. The district court granted Continental's motion to dismiss the implied cause of

action and pendent state claims, and also granted Continental's motion for summary judgment on the ERISA claim.

Reeves contends that the district court erred in determining that section 48(b) of the ICA does not contain an implied private cause of action for Reeves, and in granting Continental's motion for summary judgment on the ERISA claim without permitting Reeves to obtain discovery on facts exclusively within Continental's knowledge. Reeves does not appeal the dismissal of the pendent state law claims.

The questions presented are:

(1) whether the district court erred in determining that section 48(b) of the ICA does not imply a private cause of action for an employee of an investment company who alleges that he was discharged for attempting to investigate possible securities laws violations of the employer; and

(2) whether the district court erred in granting Continental's motion for summary judgment on Reeves' claim for severance benefits under ERISA, without permitting Reeves an opportunity to obtain discovery on facts exclusively within Continental's knowledge.

Since we find that there is no evidence that, in enacting the ICA, Congress intended to provide an implied private cause of action for a plaintiff such as Reeves under section 48(b), we affirm the district court's order of dismissal as to the implied cause of action claim. Since we conclude, however, that Reeves should have been permitted discovery prior to the court's ruling on Continental's motion for summary judgment, we reverse the court's order granting Continental summary judgment on the ERISA claim.

## BACKGROUND

In 1985, Continental Equities Corporation was registered as a broker-dealer under the Securities Exchange Act of 1934, and became a member of the National Association

---

* Hon. Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation.

of Securities Dealers (NASD). Continental served as the principal underwriter, manager, and distributor of the Continental Asset Management Funds (the Funds), a group of five funds registered under the ICA and the Securities Act of 1933. In May, 1985, Continental hired Reeves as its vice president for compliance and finance. During the time of his employment, Reeves was promoted, and earned increases in salary and discretionary bonuses.

In August, 1987, the Securities and Exchange Commission (SEC) began an audit of the Funds. At a hearing before the SEC, Reeves was questioned about possible illegal insider trading by officers and directors of the Funds. Reeves was also questioned about Continental's practice of designating certain travel, lodging, and entertainment costs as marketing expenses charged to the Funds, as permitted under SEC regulations.

On June 8, 1988, Reeves informed three directors of Continental, in writing, that Continental may have committed violations of securities regulations, and that "[a]s Chief Compliance Officer it is incumbent upon me to investigate areas of [Continental]'s business to determine if any violations of securities regulations has [sic] occurred in accordance with the powers vested in me by NASD and SEC regulations to be the watchdog." In his letter, citing a conflict with his role as chief compliance officer, Reeves also resigned as the chief financial officer of the Funds. In a second letter to the directors, dated June 9, 1988, Reeves stated that "there *may* be violations associated with the running of sales incentive programs during 1987, and I am commencing a review of the procedures and the practices that were followed." (emphasis in original).

On June 10, 1988, Reeves was summoned to a meeting with the chief of security and a member of the audit department of Continental's parent corporation, and an outside attorney who had represented Continental during the SEC investigation. At the meeting, Reeves was confronted with evidence that, in 1987, he had submitted two reimbursement claims with Continental for a single airline trip. Reeves was immediately suspended.

On June 29, 1988, after an investigation by Continental revealed that Reeves had not engaged in any wrongdoing, Reeves was nevertheless asked to resign. Upon refusing to resign, he was immediately discharged.

Reeves sued Continental, in the United States District Court for the Southern District of New York, and pleaded five causes of action. Reeves alleged an implied private cause of action under section 48(b) of the ICA, and three pendent state claims, under New York law, for wrongful discharge, severance benefits, and unreimbursed business expenses. Finally, Reeves raised an ERISA claim for severance benefits under 29 U.S.C. § 1132(a)(1)(B).

Since the district court determined that "[t]he plain language of the [ICA] reveals no ... intent to imply a private right to damages for the wrong alleged here," the court granted Continental's motion to dismiss the implied cause of action claim. *Reeves v. Continental Equities Corp. of America,* 725 F.Supp. 196, 197 (S.D.N.Y. 1989).

On the issue of Reeves' ERISA claim, the court determined that Continental's severance benefits policy was that benefits were paid only to employees who were discharged because of a reduction in force. *See id.* at 197. The court found that "[t]here is no indication that Reeves was discharged as a result of a reduction in force, and Reeves does not so allege in his complaint." *Id.* Accordingly, the court also granted Continental's motion for summary judgment on the ERISA claim.

As to the claims based on state law, the court determined that "[b]ecause the federal claims are dismissed at this early stage in the litigation, the remaining pendent state claims fall as well." *Id.* at 198.

## DISCUSSION

I. *ICA Claim*

■ Reeves contends that "section 48(b) of the Investment Company Act of 1940 implies a private cause of action for an

individual directly injured by its violation." Section 48(b) of the ICA provides that:

> It shall be unlawful for any person without just cause to hinder, delay, or obstruct the making, filing, or keeping of any information, document, report, record, or account required to be made, filed, or kept under any provision of this subchapter or any rule, regulation, or order thereunder.

15 U.S.C. § 80a–47(b) (1988).

The Supreme Court, in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), established a four part test to determine whether a private cause of action may be implied under a federal statute. The *Cort v. Ash* test considers:

> First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted,"—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Id.* at 78, 95 S.Ct. at 2088 (quoting *Texas & Pac. R. v. Rigsby*, 241 U.S. 33, 39, 36 S.Ct. 482, 484, 60 L.Ed. 874 (1916)) (citations omitted) (emphasis in original). Clearly, "[t]he 'ultimate issue is whether Congress intended to create a private cause of action.'" *Karahalios v. National Fed'n of Fed. Employees*, 489 U.S. 527, 109 S.Ct. 1282, 1286, 103 L.Ed.2d 539 (1989) (quoting *California v. Sierra Club*, 451 U.S. 287, 293, 101 S.Ct. 1775, 1779, 68 L.Ed.2d 101 (1981)). Hence, "[u]nless such 'congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist.'" *Id.* (quoting *Thompson v. Thompson*, 484 U.S. 174, 179, 108 S.Ct. 513, 519, 98 L.Ed.2d 512 (1988)).

In support of his contention that section 48(b) of the ICA creates or establishes an implied private cause of action, Reeves cites *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982). In *Curran*, the Court held that a cause of action for damages for a private investor may be implied under the Commodity Exchange Act. Reeves notes that the Court in *Curran* stated that "the initial focus must be on the state of the law at the time the legislation was enacted." *Id.* at 378, 102 S.Ct. at 1839.

The Court in *Curran* reviewed the legislative history of the Commodity Exchange Act, and noted that, prior to extensive amendments to the Act in 1974, it was understood by courts that a private cause of action was implied under this Act. *See id.* at 380–81, 102 S.Ct. at 1840–41 (citing *Chicago Mercantile Exch. v. Deaktor*, 414 U.S. 113, 94 S.Ct. 466, 38 L.Ed.2d 344 (1973)). The Court, however, stated that should the *Cort v. Ash* analysis be applied, "the statutory language would be insufficient to imply a private cause of action under these sections." *Id.* 456 U.S. at 391, 102 S.Ct. at 1845. The Court determined that in amending the Commodity Exchange Act in 1974, Congress intended to preserve the judicially recognized implied private cause of action. *See id.* at 387–88, 102 S.Ct. at 1843–44. Hence, the Court noted that, because of the prior recognition of the implied cause of action, "we are not faced with the *Cort v. Ash* inquiry." *Id.* 456 U.S. at 391, 102 S.Ct. at 1846.

*Curran*, however, is distinguishable from the present case since Reeves does not assert that prior to *Cort v. Ash* a private cause of action had been implied under section 48(b) of the ICA. Rather, Reeves asserts that an implied cause of action should be recognized since, at the time of the enactment of the ICA, courts consistently implied private causes of action under federal statutes. Regardless of the law at the time of enactment of the ICA, *Siebert v. Conservative Party of N.Y. State*, 724 F.2d 334 (2d Cir.1983), *cert. denied*, 466 U.S. 980, 104 S.Ct. 2363, 80

L.Ed.2d 835 (1984), makes it clear that the court must determine whether a private cause of action is implied on the basis of the *Cort v. Ash* factors.

In *Siebert,* the plaintiffs, unsuccessful candidates for the 1982 Republican Party nomination for United States Senator from New York, sued the Conservative Party of New York State for campaign expenses. The plaintiffs alleged that the Party had violated federal law by conducting a mailing of material, on behalf of a competitor of the plaintiffs, at a special postal rate. The plaintiffs brought suit under an implied private cause of action under 39 U.S.C. § 3626(e). *See Siebert,* 724 F.2d at 336. The district court dismissed the suit for lack of subject matter jurisdiction.

On appeal to this court, the plaintiffs argued that, in determining whether a private cause of action is implied under the statute, the court must use the analysis that was established by case law at the time that Congress enacted the statute. *See id.* at 336–37. This court rejected plaintiff's argument, however, and stated that "[a] lower federal court ... must employ the analysis currently required by the Supreme Court for making the determination of Congressional intent." *Id.* at 337. Hence, this court proceeded to affirm the decision of the district court under the *Cort v. Ash* factors. *See id.*

It is noteworthy that Congress has also recognized that the implication of private causes of action under the ICA should be governed by the *Cort v. Ash* factors. In a 1980 House Report commenting on certain amendments to the ICA, the Interstate and Foreign Commerce Committee of the House of Representatives noted "that it expects the courts to imply private rights of action under this legislation, where the plaintiff falls within the class of persons protected by the statutory provision in question." H.R.Rep. No. 1341, 96th Cong., 2d Sess., at 29, *reprinted in* 1980 U.S.Code Cong. & Admin.News 4800, 4811. The Committee added that "[s]uch a right would be consistent with and further Congress' intent in enacting that provision, and ... such actions would not improperly oc-

cupy an area traditionally the concern of state law." *Id.* The Report contains a footnote which states that "[t]hese are essentially the tests enunciated by the Court in *Cort v. Ash.*" *Id.* at n. 7, 1980 U.S.Code Cong. & Admin.News 4811, n. 7.

Under *Cort v. Ash,* the first factor to be considered is whether the plaintiff is a member of the class for whose "especial" benefit the statute was enacted. *See* 422 U.S. at 78, 95 S.Ct. at 2087. Hence, the court must consider whether Reeves is of the class of persons for whose especial benefit the ICA was enacted.

A review of the legislative history and case law indicates that the ICA was enacted for the benefit of *investors,* and not employees of investment companies. In a House Report on the ICA, the Committee on Interstate and Foreign Commerce of the House of Representatives stated that the ICA "is needed to protect small investors from breaches of trust upon the part of unscrupulous managements and to provide such investors with a regulated institution for the investment of their savings." H.R. Rep. No. 2639, 76th Cong., 3d Sess. (1940), *reprinted in* 4 Federal Bar Association, *Federal Securities Laws Legislative History 1933–1982* 3855, 3864 (1983).

In *Herpich v. Wallace,* 430 F.2d 792, 813–17 (5th Cir.1970), the court considered whether plaintiffs, a group of shareholders, had standing to sue for violations of the ICA. For purposes of deciding this question, the court assumed that the ICA "affords a private right of action for injury suffered from its violation to the class of persons whose interest the [ICA] was designed to protect." *Id.* at 815. The court then reviewed the history of the investment company industry prior to the enactment of the ICA, the language of the ICA, and the general statutory scheme of federal regulation of the securities industry. As a result of its review, the court concluded that in enacting the ICA, "Congress intended to provide a comprehensive regulatory scheme to correct and prevent certain abusive practices in the management of investment companies for the protection of persons who put up money to be invested by

such companies on their behalf." *Id.* at 816. The conclusion of the Court of Appeals for the Fifth Circuit has been expressly adopted by this court. *See Independent Investor Protective League v. SEC,* 495 F.2d 311, 312 (2d Cir.1974). *See also Option Advisory Serv., Inc. v. SEC,* 668 F.2d 120, 121 (2d Cir.1981) (per curiam) (The purpose of the ICA "is to remedy certain abusive practices in the management of investment companies, *for the protection of persons whose money is invested by such companies.*" (emphasis added)); *Greater Iowa Corp. v. McLendon,* 378 F.2d 783, 793–94 (8th Cir.1967) (The ICA was enacted for the benefit of individuals who purchase securities issued by an investment company.).

Reeves, nevertheless, contends that he is within the class of persons for whose especial benefit the ICA was enacted, since the ICA was intended for the benefit of the general public. In support of his contention, Reeves cites section 1 of the ICA, which states that "the policy and purposes of this subchapter ... are to mitigate and, so far as is feasible, to eliminate the conditions enumerated in this section which adversely affect *the national public interest* and the interest of investors." 15 U.S.C. § 80a–1(b)(1988) (emphasis added). The Supreme Court, however, has rejected similar contentions and has stated that "the Court has been especially reluctant to imply causes of actions under statutes that create duties on the part of persons for the benefit of the public at large." *Cannon v. University of Chicago,* 441 U.S. 677, 692 n. 13, 99 S.Ct. 1946, 1954–55 n. 13, 60 L.Ed.2d 560 (1979).

The second factor of the *Cort v. Ash* test is whether there is any indication of Congressional intent to imply a private cause of action. In cases employing the *Cort v. Ash* analysis, in order to ascertain Congressional intent, the courts have reviewed Congressional reports and hearings. *See, e.g., Leist v. Simplot,* 638 F.2d 283, 307–21 (2d Cir.1980), *aff'd sub nom. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982).

Reeves cites the legislative history of the Small Business Investment Incentive Act of 1980, which in part amended the ICA. In its report, the House Interstate and Foreign Commerce Committee stated that "Congress has long taken the view that private rights of action for violations of the federal securities laws are a necessary adjunct to the Commission's enforcement efforts." H.R.Rep. No. 1341, 96th Cong., 2d Sess., at 28, *reprinted in* 1980 U.S.Code Cong. & Admin.News 4800, 4810. It is pertinent to note, however, that in the same report the Committee expressly limited any implied private cause of action to "the class of persons protected by the statutory provision in question." *Id.* at 4811. As noted before, it is clear that, in enacting the ICA, Congress intended to protect investors, rather than employees of investment companies. *See Herpich,* 430 F.2d at 813–17. Furthermore, since the ICA was enacted in 1940, the 1980 Committee report cited by Reeves does not necessarily reflect the intent of the Congress that enacted the ICA. *See, e.g., Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 758, 99 S.Ct. 2066, 2072, 60 L.Ed.2d 609 (1979).

Since neither of the first two factors established by *Cort v. Ash* supports the implication of a private cause of action for a plaintiff such as Reeves, under section 48(b) of the ICA, the court cannot hold that Congress intended to create a remedy for Reeves. Hence, the final two *Cort v. Ash* factors need not be considered. *See California v. Sierra Club,* 451 U.S. 287, 297, 101 S.Ct. 1775, 1781, 68 L.Ed.2d 101 (1981). Accordingly, we hold that Reeves may not assert a private cause of action under section 48(b) of the ICA.

## II. *ERISA Claim*

Reeves' second contention on appeal is that, in granting Continental's motion for summary judgment on the ERISA claim, the district court erred by not affording Reeves an opportunity to obtain discovery of facts exclusively within Continental's knowledge.

The Employee Retirement Income Security Act, or ERISA, was enacted to protect

the rights of employees, and their beneficiaries, in employee benefit plans. *See* 29 U.S.C. § 1001 (1988). Under 29 U.S.C. § 1132(a)(1)(B), a participant in an employee benefit plan may bring suit in federal court for benefits due him under the plan. The Supreme Court has noted "that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989).

Reeves contends that Continental's severance pay and benefits policy presents "an ambiguity which Rule 56 of the Federal Reserve Rules of Civil Procedure proscribes the district court from resolving on a motion for summary judgment against the opponent of the motion without affording the opponent an opportunity to take discovery of facts within the exclusive knowledge of the movant." Under Rule 56(f), when it appears from the affidavits of a party opposing a motion for summary judgment that:

> the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed.R.Civ.P. 56(f).

Continental's severance pay and benefits policy is contained in its "Human Resources Policies Manual." In the manual, Continental states that no benefits are granted to employees who voluntarily leave employment, who are terminated because of Continental's sale of a subsidiary, or who are "terminated due to application of the Corrective Action Procedure." Continental does not contend that Reeves voluntarily left his employment, or that he was terminated because of the sale of a subsidiary. Furthermore, it is not disputed that, before Reeves' termination, an investigation by Continental revealed no impropriety or misconduct, and, hence, Reeves was not terminated as a result of a "Corrective Action Procedure." In his affidavit, Reeves states that "[o]n the day I was discharged ... I met with [Continental's vice president] and [the vice president of Continental's parent corporation], and they told me that they were satisfied there was no impropriety or wrongdoing on my part...." Hence, Reeves' affidavit raises questions of fact pertaining to Reeves' termination which, with discovery, may defeat Continental's motion for summary judgment.

In addition, there are other questions of fact raised by the Reeves affidavit. Continental notes that the section of its manual referred to by Reeves only pertains to Continental's reductions in force. Hence, Continental asserts that the district court did not err in concluding that Reeves was not entitled to benefits under the policy, since Continental only provides benefits to employees terminated because of reductions in force. In his affidavit, however, Reeves states that his firing "was, in actual fact, a 'reduction in force.'" Reeves asserts that "over the ensuing months the entire staff of Continental Equities was progressively eliminated, so that by March 1989 nothing remained of the Company but a shell." Reeves also stated that as far as he knew, "every member of the staff who lost his job, except me, received severance benefits." Thus, Reeves' affidavit raises a question of fact, as to whether Reeves was terminated as part of a reduction in force, which may defeat Continental's motion for summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Beatty v. Washington Metro. Area Transit Auth.*, 860 F.2d 1117, 1120–21 (D.C.Cir. 1988).

## CONCLUSION

Since we find that Congress did not intend to provide a private cause of action for damages for a plaintiff such as Reeves, under section 48(b) of the Investment Company Act of 1940, we affirm the judgment

of the district court dismissing Reeves' implied cause of action claim. We conclude, however, that Reeves' affidavit raises questions of fact which, with discovery, may defeat Continental's motion for summary judgment on the ERISA claim. Accordingly, we reverse the order of the district court granting Continental's motion for summary judgment on the ERISA claim, and remand for further proceedings.