**The HEALTH CARE PLAN, INC.,**
**Plaintiff–Appellant,**

v.

**AETNA LIFE INSURANCE COMPANY,**
**Defendant–Appellee.**

**No. 1113, Docket 91–9234.**

United States Court of Appeals,
Second Circuit.

Argued March 13, 1992.

Decided June 10, 1992.

James L. Magavern, Buffalo, N.Y. (Cheryl Smith Fisher, Robin J. Chapman, Magavern & Magavern, of counsel), for plaintiff-appellant.

Michael Wolford, Rochester, N.Y. (Richard S. Crummins, Nixon, Hargrave, Devans & Doyle, of counsel), for defendant-appellee.

Before OAKES, Chief Judge, WALKER, Circuit Judge, and PARKER, District Judge.*

OAKES, Chief Judge:

This appeal presents the question whether 42 U.S.C. § 300e–9 (1988) of the Health Maintenance Organization Act of 1973 confers on health maintenance organizations (HMOs) a private cause of action against employers. The Health Care Plan, Inc. ("HCP")—a federally-qualified HMO— brought an action for damages and injunctive relief against Aetna Insurance Co., pursuant to 42 U.S.C. § 300e–9 and N.Y.Pub.Health Law § 4407 (McKinney 1985 & Supp.1992), to remedy Aetna's refusal to include HCP as an option in its 1992 employee health benefits plan. HCP appeals from a judgment of the United States District Court for the Western District of New York, John T. Curtin, *Judge,* which dismissed the federal claims on the grounds that section 300e–9 bestowed no private right of action on HMOs and refused to entertain pendant jurisdiction over the state law claim. 776 F.Supp. 118 (W.D.N.Y.1991). HCP's sole argument on appeal is that section 300e–9(a)–(b) creates an implied right of action. We find that there is no evidence that Congress intended to provide HMOs with a cause of action under section 300e–9; therefore, we affirm the district court's dismissal of HCP's claims.

---

\* Honorable Fred I. Parker, Chief Judge of the U.S. District Court for the District of Vermont, sitting by designation.

1. Employers that would be subject to 29 U.S.C. § 206 but for the exception established by 29 U.S.C. § 213(a) and that meet the remaining criteria of section 300e–9 are also subject to the requirements of section 300e–9.

2. Section 300e–9(a), in pertinent part, provides:
   (1) In accordance with regulations which the Secretary shall prescribe—
   (A) each employer—
     (i) which is now or hereafter required during any calendar quarter to pay its employees the minimum wage prescribed by section 206 of Title 29 (or would be required to pay its employees such wage but for section 213(a) of Title 29), and
     (ii) which during such calendar quarter employed an average number of employees of not less than 25,

## I

Section 300e–9(a)—known as the dual option requirement—specifies that employers which are subject to minimum wage regulations under the Fair Labor Standards Act, 29 U.S.C. § 206 (1988),[1] employ at least twenty-five employees per year, and offer their employees a health benefits plan must also offer their employees the option of joining an HMO, if a federally-qualified HMO is available in the area.[2] If both the staff-model and the individual-practice/group-model varieties of HMOs exist in the area,[3] employers subject to section 300e–9 must include within their benefits options at least one of each of these two types of HMOs. 42 U.S.C. § 300e–9(b) (1988).

In 1979, HCP—a qualified, staff-model HMO, providing services in Erie County, New York—requested that Aetna offer its Erie County employees the option of participating in HCP's health program. Aetna complied with HCP's request, as required by section 300e–9. By 1990, twelve of Aetna's thirty-five employees in Erie County belonged to HCP. In 1991, Aetna informed HCP that, as of 1992, it would no longer offer HCP as an option in their employee health benefits plan. Aetna cited as the basis for discontinuing the HCP option HCP's failure either to respond to a letter of agreement Aetna had circulated to

shall include in any health benefits plan
   . . . .
offered to such employees in the calendar year beginning after such calendar quarter the option of membership in qualified health maintenance organizations which are engaged in the provision of basic health services in health maintenance organization service areas in which at least 25 of such employees reside.

3. In a staff-model HMO, the majority of basic health services are provided by health professionals who are employed by the HMO. *See* § 300e–9(b)(1). In a group-model HMO, the HMO contracts with an independent physician practice group to provide care to subscribers. In an individual-practice association model HMO, the HMO contracts with independent physicians or groups of physicians to provide services. Clark Havighurst, *Doctors and Hospitals: An Antitrust Perspective on Traditional Relationships,* 1984 Duke L.J. 1071, 1073 n. 3.; *see* § 300e–9(b)(2).

HMOs included in its health benefits plans or to submit a written request to be included among Aetna's options to its employees in 1992 as required by 42 C.F.R. § 417.152 (1991). HCP, on the other hand, denies the validity of both of the reasons Aetna provided for dropping the HCP option. The dispute over whether Aetna discontinued offering its employees HCP's services in violation of section 300e–9, however, is not before us on appeal. The only issue on appeal is whether the district court erred in its determination that section 300e–9 does not confer on HCP, or any other HMO, the right to bring a private action in federal court against an employer.

## II

◼ Section 300e–9 makes no explicit mention of a private right of action to pursue remedies for violations of the Act. We must determine, therefore, whether Congress intended in enacting the HMO Act or its amendments to create an implied private right of action.[4] *Suter v. Artist M.*, — U.S. —, 112 S.Ct. 1360, 1370, 118 L.Ed.2d 1 (1992); *Karahalios v. Local 1263, National Fed'n of Fed. Employees*, 489 U.S. 527, 532, 109 S.Ct. 1282, 1286, 103 L.Ed.2d 539 (1989). The four factors set forth in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087–88, 45 L.Ed.2d 26 (1975), serve as tools for discerning Congress' intent in the face of statutory silence. *See Suter*, 112 S.Ct. at 1370; *Thompson v. Thompson*, 484 U.S. 174, 179, 108 S.Ct. 513, 516, 98 L.Ed.2d 512 (1988). These factors are: (1) whether the plaintiff is "one of the class for whose *especial* benefit the statute was enacted," *Cort*, 422 U.S. at 78, 95 S.Ct. at 2088; (2) whether there is "any indication of legislative intent, explicit or implicit, either to create such a remedy or deny one," *id.*; (3) whether private enforcement is "consistent with the underlying purposes of the legislative scheme," *id.*; and (4) whether the cause of action is "one traditionally relegated to state law." *Id.* Although *Cort* envisioned these

factors as a four-pronged test for whether it was appropriate for a court to create common law remedies for statutory violations, the Supreme Court has since refocused (perhaps "shifted" would be a more apt description) the test by emphasizing the centrality of the second factor—congressional intent. *Karahalios*, 489 U.S. at 532–33, 109 S.Ct. at 1286–87; *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575–76, 99 S.Ct. 2479, 2488–89, 61 L.Ed.2d 82 (1979); Erwin Chemerinsky, *Federal Jurisdiction* 318–20 (1989). The remaining *Cort* factors now enter into the analysis, if at all, only as proxies for legislative intent. *Thompson*, 484 U.S. at 179, 108 S.Ct. at 516; *Pryor v. United States Steel Corp.*, 794 F.2d 52, 57 (2d Cir.), *cert. denied*, 479 U.S. 954, 107 S.Ct. 445, 93 L.Ed.2d 393 (1986); *CETA Workers' Org. Comm. v. City of New York*, 617 F.2d 926, 931–32 (2d Cir. 1980). The Supreme Court, without expressly overruling the earlier precedents, for all practical purposes has adopted Justice Powell's dissenting views in *Cannon v. University of Chicago*, 441 U.S. 677, 730, 99 S.Ct. 1946, 1974–75, 60 L.Ed.2d 560 (1979).

Framing its arguments in terms of the *Cort* analysis, HCP argues that Congress' intent to create a private right of action emerges from section 300e–9. According to HCP, HMOs were the intended beneficiary of section 300e–9, thus, satisfying the first *Cort* factor. The logic that underlies this *Cort* factor is that if Congress intended to benefit a certain group through legislation, it is more likely that Congress intended for that group to seek relief directly in federal court. *Pryor*, 794 F.2d at 57. In arguing that HMOs are the intended beneficiary of the HMO Act, HCP, however, confuses the notions of "beneficiary" and "intended beneficiary." The legislative history of the Act reveals that Congress intended to benefit consumers by injecting increased competition into the health care market and, ultimately, by providing lower

---

4. We do not reach the question whether section 300e–9 confers a private right of action on employees nor do we consider whether an HMO may assert third-party standing to represent the

interests of employees. *But see UAW v. Ring Screw Works*, 741 F.Supp. 660, 663 (E.D.Mich. 1990) (holding that § 300e–9 does not confer a private right of action on Unions).

prices for services. *See* S.Rep. No. 129, 93rd Cong., 1st Sess., *reprinted in,* 1973 U.S.C.C.A.N. 3033, 3039–40; S.Rep. No. 837, 95th Cong., 2nd Sess., *reprinted in,* 1978 U.S.C.C.A.N. 4935, 4942. Congress, thus, viewed HMOs as a means rather than an end. However, even if HMOs were the intended beneficiary of the HMO Act, the bare fact that HMOs benefit from the statute does not require courts to create for them a private right of action to protect that benefit. *See Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis,* 444 U.S. 11, 24, 100 S.Ct. 242, 249, 62 L.Ed.2d 146 (1979); *Touche Ross,* 442 U.S. at 578, 99 S.Ct. at 2490.

HCP claims that the second *Cort* factor—the central question whether the language, structure, or legislative history of the statute provide a predicate for the implication of a private remedy—is satisfied by the "specific right-creating language" of section 300e–9(a)–(b). The language of section 300e–9 leaves no doubt that Congress intended to impose obligations upon *employers.* But these obligations, in and of themselves, do not provide a basis for conferring a private right of action on *HMOs,* without further indication of congressional intent. *See TAMA,* 444 U.S. at 16–18, 100 S.Ct. at 245–46. HCP fails to identify indicia of such intent. Section 300e–9(e), in fact, reveals that Congress envisioned an administrative rather than a judicial enforcement scheme. The Secretary of Health and Human Services ("HHS") (then Health, Education and Welfare) has the authority to assess civil penalties for employers who knowingly fail to comply with the Act. In situations in which Congress expressly relied upon an administrative scheme to induce compliance, we should be particularly reluctant to imply a private cause of action without sufficient evidence of Congress' intent. *See Touche Ross,* 442 U.S. at 574, 99 S.Ct. at 2488.

HCP argues that we must look to the context within which Congress legislated to uncover congressional intent. When Congress enacted the HMO Act, it operated on the basis of a different paradigm of the judiciary's role in the creation of causes of action. At that time, the prevailing view was that courts should create private rights of action if they would help effectuate the purpose of the statute and the legislative history did not bear witness to Congress' opposition to such remedies, *see J.I. Case Co. v. Borak,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); Chemerinsky, *supra,* at 317–18; thus, HCP argues, meager direct evidence of a congressional intent to create a private cause of action, with respect to statutes of this era, is not dispositive. But to the extent that HCP argues that the appropriate analysis in determining whether an implied cause of action exists is the method of analysis that courts applied at the time of the statute's enactment, we disagree, however much we may have been persuaded by the earlier view of the Court.

█ HCP seizes upon dicta from *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 378–79, 102 S.Ct. 1825, 1839–40, 72 L.Ed.2d 182 (1982) and *Cannon v. University of Chicago,* 441 U.S. at 698–99, 99 S.Ct. at 1958–59, to support this proposed canon of statutory interpretation. Indeed, the *Curran* Court stated that in analyzing whether a private cause of action is implicit in a statutory scheme "we must examine Congress' perception of the law that it was shaping or reshaping." 456 U.S. at 378, 102 S.Ct. at 1839. In *Curran,* however, the issue before the Court was not whether Congress intended to create a private cause of action but whether Congress, when amending a statute, intended to continue a private cause of action that had been inferred by the courts prior to the advent of the *Cort* analysis. In *Cannon,* the Court held that a cause of action was implied under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688 (1988), because the statute was patterned after Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d (1988), which, in turn, had been interpreted to imply a private cause of action. 441 U.S. at 699–703, 99 S.Ct. at 1958–61. In these limited circumstances, the Court will presume congressional intent to preserve a private cause of action without engaging in

742

a *Cort*-type analysis. *See Curran*, 456 U.S. at 391, 102 S.Ct. at 1845–46; *Herman & MacLean v. Huddleston*, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983); Chemerinsky, *supra*, at 321. But in all other situations, we are told to determine whether a private cause of action is implied by applying the law in effect at the time of decision—in this case, a structured inquiry into Congress' intent—rather than the method of analysis that courts applied at the time of a statute's enactment. *Reeves v. Continental Equities Corp. of America*, 912 F.2d 37, 40 (2d Cir.1990); *Siebert v. Conservative Party*, 724 F.2d 334, 336–337 (2d Cir.1983), *cert. denied*, 466 U.S. 980, 104 S.Ct. 2363, 80 L.Ed.2d 835 (1984).[5]

Thus, the emphasis of our inquiry, as noted above, is whether Congress intended to create a private cause of action. The first two *Cort* factors fail to indicate that Congress intended a private cause of action pursuant to section 300e–9 and, in this context, the final two *Cort* factors, in and of themselves, would not constitute sufficient evidence of congressional intent. Therefore, we need not consider the remaining *Cort* factors. *See California v. Sierra Club*, 451 U.S. 287, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981); *Reeves*, 912 F.2d at 42; *see also County of Monroe v. Florida*, 678 F.2d 1124, 1128 (2d Cir.1982), *cert. denied*, 459 U.S. 1104, 103 S.Ct. 726, 74 L.Ed.2d 951 (1983).

### III

HCP next contends that when considering whether a statute implies a private right of action for *equitable relief*, courts need not engage in a restrictive, *Cort*-type analysis to ascertain Congress' intent. For each type of remedy a litigant seeks, according to this argument, courts must examine whether Congress intended the

cause of action. HCP, furthermore, draws a distinction between equitable remedies and damage remedies with respect to the analysis used to determine if the statute implies a private right of action. Damage remedies, indeed, have a potential to result in either under- or over-deterrence; thus, by implying private damage remedies the judiciary runs the risk of undermining the legislative purpose of a statute. *See* Tamar Frankel, *Implied Rights of Action*, 67 Va.L.Rev. 553, 570–78 (1981). Injunctive relief and other equitable remedies, in contrast, often do not give rise to the same concerns. *See Piper v. Chris–Craft Indus.*, 430 U.S. 1, 40 & n. 26, 97 S.Ct. 926, 948 & n. 26, 51 L.Ed.2d 124 (1977). From a policy perspective, therefore, it might make sense to use a less restrictive standard for the implication of equitable remedies. This Term, however, the Supreme Court, in two cases, demonstrated that the same analysis applies independently of the remedy sought by the plaintiff. First, in *Suter*, 112 S.Ct. at 1370, the Court applied the *Cort* analysis to determine whether a federal statute conferred a private right of action for declaratory and injunctive relief. Second, in *Franklin v. Gwinnett County Pub. Schs.*, — U.S. ——, 112 S.Ct. 1028, 1032–35, 117 L.Ed.2d 208 (1992), the Court clarified the relationship between the analysis whether a plaintiff has an implied right of action and the determination of what remedies are available pursuant to that private action. *Franklin* made clear that "the question whether a litigant has a 'cause of action' is analytically distinct and prior to the question of what relief, if any, a litigant may be entitled to receive." 112 S.Ct. at 1034 (quoting *Davis v. Passman*, 442 U.S. 228, 239, 99 S.Ct. 2264, 2273–74, 60 L.Ed.2d 846 (1979)). Thus at step one, when confronted with congressional silence whether a stat-

---

**5.** To the extent that HCP intends to argue that the contemporary legal context in which Congress legislated has bearing on Congress' intent—rather than on the method of analysis we employ to determine that intent—HCP is undoubtably correct. *See Karahalios*, 489 U.S. at 536, 109 S.Ct. at 1288 (for statutes enacted in the 1980s, after the shift to the current inquiry into congressional intent, the Court will take this legal context into account in ascertaining Con-

gress' intent). But this is of little aid to HCP. As noted above, HCP musters no affirmative evidence that Congress intended a private cause of action under section 300e–9; instead, HCP relies primarily upon the legal context within which Congress legislated. In this situation, the contemporary legal context does not suffice to establish affirmative evidence of Congress' intent to create a private cause of action.

ute confers a private right of action, we look to indicia of Congress' intent to bestow a private cause of action.[6] If an implied right of action emerges from this analysis, then, at step two, we presume—absent clear congressional direction to the contrary—that "the federal courts have the power to award any appropriate relief." *Id.* 112 S.Ct. at 1035; *see also Bell v. Hood,* 327 U.S. 678, 684 (1946). Given the teachings of *Suter* and *Gwinnett,* we are required to reject HCP's attempt to refashion the role of the remedy sought in determining whether a statute implies a cause of action.

### IV

We find that there is no affirmative evidence of Congress' intent to bestow a private cause of action on HMOs to enforce section 300e–9. We therefore affirm the district court's order dismissing HCP's suit against Aetna for alleged violations of section 300e–9 in conjunction with Aetna's discontinuation of HCP as an option in its employee benefits plan.

---

6. The enforcement methods expressly provided for in a statute, of course, may constitute evidence of Congress' intent whether or not to create a private cause of action.