**TRAVELERS HEALTH NETWORK
OF LOUISIANA**

v.

**ORLEANS PARISH SCHOOL BOARD.**

Civ. A. No. 93–3740.

United States District Court,
E.D. Louisiana.

Jan. 7, 1994.

Orleans Parish School Board ("OPSB"), under Title 42 U.S.C. § 1983 for equitable and declaratory relief and for money damages caused by defendant's alleged deprivation under color of state law of a right, privilege or immunity secured to plaintiff by a federal statute. Specifically, THNL contends that 42 U.S.C. § 300e–9 of the Health Maintenance Organization Act of 1973 ("the Act") grants THNL, a federally qualified HMO, the right and entitlement to be offered as a health care benefit plan option to OPSB's employees upon THNL's compliance with the Act and regulations promulgated under the Act. According to THNL, OPSB violated the Act and THNL's rights under the Act by refusing to accept THNL's March 4, 1993 request to be considered for offering as a health benefit option for the 1993–94 plan year.

Presently before the court is THNL's motion for a preliminary injunction which: (1) requires OPSB to enter into a contract for HMO services with THNL that includes the terms set forth in THNL's request; (2) requires OPSB to hold another open enrollment period for the 1993–94 plan year; and (3) nullifies the election of health benefit options exercised by OPSB's employees for the 1993–94 plan year, effective as of the close of the renewed open enrollment period. Also before the court is OPSB's motion to dismiss THNL's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

John R. Martzell of Martzell & Bickford, New Orleans, LA for plaintiff.

Franklin V. Endom, Jr. and Leon Rittenberg III of Polack, Rosenberg, Rittenberg & Endom, New Orleans, LA, for defendant.

## MEMORANDUM AND ORDER

SEAR, Chief Judge.

Plaintiff, Travelers Health Network of Louisiana ("THNL"), has sued defendant,

### Factual Background

The federal HMO Act, 42 U.S.C. § 300e, *et seq.* was enacted in 1973 as part of the federal government's continuing effort to insure the availability of managed health care services to large segments of the American public. Section 300e–9(a)(1)(B) of the Act specifies that states and their political subdivisions which employ at least twenty-five employees per year and offer their employees a health benefits plan must also offer their employees the option of joining a federally-qualified HMO, if one is available in the

area.[1]  It is undisputed that OPSB is an employing entity covered by the Act and that THNL is a federally-qualified HMO.

Indeed, beginning in 1987 and continuing until August 31, 1993, THNL entered into a series of contracts with OPSB to provide an HMO option in OPSB's health benefits plan, and was offered to the school board's employees as the only HMO option in each plan year from 1987 through 1992.  The most recent contract, for the 1992–93 plan year, ended on August 31, 1993.  During the early months of 1993, THNL learned that OPSB did not intend to offer THNL's HMO as a benefit option for the 1993–94 plan year.  On March 4, 1993 THNL gave written notice, what is referred to as a "mandate," to OPSB that it desired to be considered for offering to the school board's employees as the HMO option for the plan year beginning September 1, 1993.  On April 27, 1993, OPSB informed THNL that it refused THNL's mandate as untimely under the applicable regulations.[2]

Despite THNL's attempts to convince OPSB that its interpretation of the regulations was incorrect and that THNL's mandate was timely at least with respect to non-union employees, OPSB remained firm in its refusal to consider offering the THNL HMO as a health care benefit option for 1993–94.  On June 10, 1993 THNL communicated with the Director of the Office of Prepaid Health Care Operations and Oversight ("OPHCOO"), Health Care Financing Administration within the United States Department of Health and Human Services.  OPHCOO is the federal agency with authority to oversee the Act and the regulations under the Act.  On July 7, 1993, OPHCOO informed OPSB by letter that, because the deadlines for making the request differed in connection with union and non-union employee contracts, OPSB should reconsider its interpretation of the regulations.[3]

OPSB refused to reconsider its position, and on August 31, 1993 the contract between THNL and OPSB for the 1992–93 plan year terminated.  On September 1, 1993, GIA began exclusively to administer OPSB's health benefits plan.  No federally-qualified HMO is currently being offered to school board employees.

### Discussion

Before a preliminary injunction may issue, the plaintiff must demonstrate that (1) there is a likelihood he will prevail ultimately on the merits;  (2) there is a substantial danger he will suffer irreparable injury if the injunction does not issue;  (3) the threatened injury outweighs any harm to the defendant resulting from the injunction; and (4) the injunction will not harm the public interest.  *Hull v. Quitman County Bd. of Educ.*, 1 F.3d 1450, 1453 (5th Cir.1993) (cit-

---

1.  Section 300e–9(a), in pertinent part, provides:

> (1) In accordance with regulations which the Secretary shall prescribe—
>
> .    .    .    .    .
>
> (B) any State and each political subdivision thereof which during any calendar quarter employed an average number of employees of not less than 25, as a condition of the payment to the State of funds under section 246(d), 247b, 247c, 300a, 300m–4, or 300p–3 of this title, shall include in any health benefits plan,
>
> .    .    . .    .    .
>
> offered to such employees in the calendar year beginning after such calendar quarter the option of membership in qualified health maintenance organizations which are engaged in the provision of basic health services in health maintenance organization service areas in which at least 25 of such employees reside. 42 U.S.C. § 300e–9(a)(1)(B).

2.  According to the pertinent regulations, a federally-qualified HMO must direct its request for consideration to the chief executive officer of the public entity or the public entity's designee.  42 C.F.R. § 417.152(b)(2).  Unless otherwise agreed to between the HMO and the employing entity or the public entity, the written request must be received by the public entity or designee

> no more than 365 days and not less than 180 days before the expiration or renewal date of a health benefits contract or employing entity-employee contract, and no more than 365 days and not less than 180 days before the expiration date of a collective bargaining agreement, or in the case of a public entity, such longer period as may be prescribed by State law. 42 C.F.R. § 417.152(a).

3.  OPHCOO reiterated this directive on October 21, 1993.  However, in spite of OPHCOO's position that OPSB's interpretation of the regulations was incorrect, OPCHOO apparently never recommended to the Secretary that funds be withheld from the State as a result of OPSB's alleged violation of the Act.

*ing Roho, Inc. v. Marquis,* 902 F.2d 356, 358 (5th Cir.1990)). Because a preliminary injunction is an extraordinary remedy, it should not to be granted routinely, but only when the plaintiff, by a clear showing, carries its burden of persuasion on each of the four elements. *Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana,* 762 F.2d 464, 472 (5th Cir.1985). Failure to satisfy any one of the factors will preclude issuance of the injunction. *Vault Corp. v. Quaid Software Ltd.,* 655 F.Supp. 750, 757 (E.D.La.1987), *aff'd,* 847 F.2d 255 (5th Cir. 1988).

    ■ After carefully reviewing the relevant provisions and the parties' submissions, I conclude that an HMO has no cause of action under § 1983 against an employing entity for an alleged violation of § 300e–9 of the HMO Act. Accordingly, not only does THNL have no chance of success on the merits for purposes of obtaining a preliminary injunction,[4] THNL's complaint must be dismissed for failure to state a claim under § 1983. Title 42 U.S.C. § 1983 provides a private cause of action against any person who under color of state law deprives another of "any rights, privileges, or immunities, secured by the Constitution and laws [of the United States]." While the Supreme Court has held that a § 1983 cause of action is available as a remedy for violations of federal statutes as well as for constitutional violations, *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), it has also recognized two exceptions to this rule. A plaintiff alleging a violation of a federal statute will not be permitted to sue under § 1983 if (1) the statute does not create enforceable rights, privileges, or immunities within the meaning of § 1983 or (2) Congress has foreclosed such enforcement of the statute in the enactment itself. *Wright v. Roanoke Redevelopment and Housing Authority,* 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987). Thus, a determination that § 1983 is available to remedy an alleged statutory or constitutional violation involves a two-step

inquiry. First, the plaintiff must assert the violation of a federal right. Second, even when plaintiff can establish a federal right, the defendant may show that Congress foreclosed any § 1983 remedy for its violation.

    ■ Because § 1983 speaks in terms of "rights, privileges or immunities," not violations of federal law, the court must first determine whether the statute in question creates a "federal right" that is enforceable under § 1983. *Golden State Transit Corp. v. Los Angeles,* 493 U.S. 103, 105, 110 S.Ct. 444, 448, 107 L.Ed.2d 420 (1989). The Supreme Court set forth a framework for making this determination in *Wilder v. Virginia Hospital Association,* 496 U.S. 498, 509, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455 (1990), based on factors it had used in previous cases, including *Golden State* and *Wright.* Under the *Wilder* formula, the first inquiry is "whether the provision in question was intend[ed] to benefit the putative plaintiff." *Id.* at 509, 110 S.Ct. at 2517. If the court answers this question in the affirmative, then the federal statutory provision creates an enforceable right unless (1) it reflects merely a congressional preference for a certain kind of conduct rather than a binding obligation on the governmental unit or (2) the interest the plaintiff asserts is too vague and amorphous, such that it is beyond the competency of the judiciary to enforce. *Id.*

In a recent decision, however, the Supreme Court appeared to depart from the *Wilder* framework, calling into question its continued viability. In *Suter v. Artist M.,* —— U.S. ——, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992), the Supreme Court addressed the issue of whether private individuals had the right to enforce by suit a provision of the Adoption Assistance and Child Welfare Act of 1980 ("AACWA"). —— U.S. at ——, 112 S.Ct. at 1366. The plaintiffs, wards of the Illinois juvenile court, filed a class action against the Illinois Department of Children and Family Services ("the agency"). They alleged that the agency had violated a provision of the

---

**4.** "[P]reliminary injunctions are denied without a hearing, despite a request therefor by the movant, when the written evidence shows the lack of a right to relief so clearly that receiving further evidence would be manifestly pointless." C.

Wright & A. Miller, *Federal Practice and Procedure: Civil* § 2949 at 478–79 (1973) cited favorably in *DFW Freeport v. Mardian Const. Co.,* 729 F.2d 334, 341 (5th Cir.1984).

Act that required the State, to be eligible for reimbursement from the federal government for certain expenses, to submit a plan to the Secretary which provided that the agency would make "reasonable efforts" to prevent removal of a child from his home and to make return to the home possible. 42 U.S.C. § 671(a)(15).

Before the *Suter* Court was the issue of whether the provision requiring "reasonable efforts" conferred enforceable rights under § 1983. The Chief Justice, writing for the six-member majority, did not follow the *Wilder* framework. Instead, he focused carefully on congressional intent, emphasizing that when Congress intends to impose conditions on the grant of federal money, any intended enforcement right must be "unambiguously" conferred. *Id.* at —— – ——, 112 S.Ct. at 1367–70. He also stressed that each statute must be examined on its own basis. *Id.* In the end, the *Suter* Court concluded that the Act's language and legislative history did not reveal unambiguously Congress' intent to provide the children with a § 1983 remedy to enforce the "reasonable efforts" clause. *Id.* at —— – ——, 112 S.Ct. at 1367–70.

Defendant OPSB urges that the *Suter* decision supersedes *Wilder* entirely, but makes arguments under the *Wilder* framework in the event I apply *Wilder;* plaintiff relies primarily on *Wilder.* The Fifth Circuit, when recently called upon to address the issue of "enforceable rights" under § 1983, recognized that *Suter* called into question the viability of the *Wilder* framework, but declined to determine the extent of change effected by *Suter* because "even under the *Wilder* framework," the relevant provision did not create a federally enforceable right within the meaning of § 1983." *Resident Council of Allen Parkway Village v. HUD,* 980 F.2d 1043, 1052 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 75, 126 L.Ed.2d 43 (1993). Other courts have simi-

larly avoided the issue. Some courts have synthesized *Wilder* and *Suter* by proceeding with the two-step *Wilder* analysis and bearing in mind the additional considerations mandated by *Suter.* *Stowell v. Ives,* 976 F.2d 65, 68 (1st Cir.1992); *Procopio v. Johnson,* 994 F.2d 325, 331 (7th Cir.1993). I choose to follow the latter approach.

Following the basic framework set forth in *Wilder,* the first question is whether THNL is the intended beneficiary of the relevant provision, § 300e–9 of the HMO Act. Plaintiff THNL glosses over this prong of the analysis, asserting conclusorily that "here there is no question that HMOs such as THNL are the intended beneficiaries of the federal HMO Act." [5] THNL does not point to any language in the relevant provision of the HMO Act or any other provisions of the Act, nor to any legislative history, in support of its assertion. THNL cites an unpublished report and recommendation by a magistrate judge of the Middle District of Tennessee, wherein the magistrate judge concluded that the federal HMO Act "creates a specific right for a qualified HMO to be considered as an option in a covered employer's health benefits plan." [6] However, my examination of that opinion reveals only a conclusory statement by the magistrate judge, similar to plaintiff's, that HMOs are the intended beneficiary of the Act, with a somewhat more thorough analysis of whether the statute creates a "binding obligation" and the right is one "capable of judicial enforcement." [7]

Defendant OPSB contends that the question, whether a plaintiff is the intended beneficiary of a statutory provision such that violation of the provision provides him with a cause of action under § 1983, is functionally equivalent to part of the test courts use to determine whether a plaintiff has an implied private right of action under a federal statute. [8] Under the first prong of the "implied

---

**5.** Memorandum in Support of Motion for Preliminary Injunction, at 18.

**6.** *Prudential Healthcare Plan, Inc. v. Metropolitan Gov't of Nashville & Davidson County,* No. 3:91–0609, slip op. at 42 (M.D.Tenn. Feb. 24, 1992). The district court never adopted the Report and Recommendation, as the action was subsequently dismissed.

**7.** *See id.* at 43.

**8.** *See* Memorandum in Opposition to Motion for Preliminary Injunction, at 3; Memorandum in Support of Motion to Dismiss for Failure to State a Claim under § 1983, at 5–10 and Supplemental Memorandum, at 1–3.

private right of action" analysis, the court determines whether "the plaintiff is one of the class for whose especial benefit the statue was enacted." [9] Based on the similarity of the tests, defendant urges that I look to a recent case in which the Second Circuit was called upon to determine whether § 300e–9 of the HMO Act confers on HMOs an implied private cause of action against employers. *Health Care Plan, Inc. v. Aetna Life Ins. Co.*, 966 F.2d 738 (2d Cir.1992). The Second Circuit, using the *Cort* factors, first determined that HMOs were not the intended beneficiaries of the relevant provision of the HMO Act. *Id.* at 740. According to the court, the legislative history revealed that "Congress intended to benefit consumers by injecting increased competition into the health care market and, ultimately, by providing lower prices for services." *Id.* at 740–41 (citing S.Rep. No. 129, 93d Cong., 1st Sess.; S.Rep. No. 837, 95th Cong., 2nd Sess.). Any benefit to HMOs was incidental, not intended, insofar as Congress "viewed HMOS as a means rather than an end." *Id.* at 741. Plaintiff contends that it would be improper to look to the *Aetna* case because in implied cause of action cases the burden on the plaintiff is heavier and the test is different.

■■■ To determine whether a plaintiff is the intended beneficiary of the statute for purposes of § 1983, the court typically looks to congressional intent, as revealed by the language of the statute and, if necessary, the statute's legislative history and other aids. *Wilder*, 496 U.S. 498, 510, 110 S.Ct. 2510, 2518; *Wright*, 479 U.S. at 433–35, 107 S.Ct. at 775–76 (O'Connor, J., dissenting). I conclude that, in this regard, the inquiry is indeed functionally the same as the first prong of the test used to determine the existence of an implied private right of action

under a federal statute. *Suter*, ―― U.S. at ――, 112 S.Ct. at 1370; *Golden State*, 493 U.S. 103, 105, 110 S.Ct. 444, 448; *Del A. v. Roemer*, 777 F.Supp. 1297, 1310 (E.D.La. 1991). I also conclude, particularly in light of *Suter*, that although the plaintiff may carry a heavier burden in claiming an implied private right, even in § 1983 cases the burden is on the putative § 1983 plaintiff to demonstrate the existence of an "enforceable right." *Suter*, ―― U.S. at ――, 112 S.Ct. at 1370; *Golden State*, 493 U.S. at 105, 110 S.Ct. at 448.

Courts often do not spend much time on the "intended beneficiary" factor because it is clear that the putative § 1983 plaintiff was the intended beneficiary of the relevant statute. That does not mean I can gloss over the inquiry in this case. In examining congressional intent, I must first examine the statutory language to determine whether it is phrased in terms of the persons benefitted. Plaintiff asserts that § 300e–9 of the federal HMO Act creates an enforceable right in federally-qualified HMOs to be considered for offering as a health care benefit plan option to the covered entity's employees where, as here, they have made a timely request. According to the pertinent language of § 300e–9, "any State and each political subdivision" which employs a certain number of employees, and as a condition to the receipt of certain benefits, "shall include in any health benefits plan ... the option of membership in qualified health maintenance organizations...." Under the regulations governing inclusion of qualified HMOs in employee health benefits plans, another provision on which plaintiff relies, unless the HMO and the employing entity agree otherwise, the employer must receive the HMO's request for inclusion within a certain time

---

9. In *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court set forth four factors for determining whether a federal statute created an implied right of action. These factors are:

First, is the plaintiff one of the class for whose especial benefit the statute was enacted, that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or im-

plicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?
*Id.* at 78, 95 S.Ct. at 2088.

frame.[10] Neither of these provisions, on their face, evenly remotely suggest that Congress intended to benefit HMOs.

Nor does the legislative history of the federal HMO Act lend any support to plaintiff's argument. The legislative history suggests that the HMO Act had two central purposes. First, certain provisions of the Act were designed "to provide assistance and encouragement for the establishment and expansion of health maintenance organizations...." S.Rep. No. 129, 93rd Cong., 1st Sess., *reprinted in* 1973 U.S.Code Cong. & Admin.News 3033. To this end, the federal government authorized grants, loans, loan guarantees and other financial inducements in an effort to assist persons who desired to construct and operate HMOS. *Id.* at 3036. *See* 42 U.S.C. § 300e–4.

Second, the Act was designed to make available to middle and working class Americans the option of membership in an HMO. According to the legislative history relevant to § 300e–9, "the goal ... [was] to increase the [health care] options from the point of view of the consumer...." 1973 U.S.Code Cong. & Admin.News at 3039. Thus, by requiring certain employers to include HMOs as a health care benefits option for their employees, Congress hoped to enable more Americans to choose cost-efficient HMO options by making HMOs available throughout the United States. *Id.* at 3034.

■ Therefore, although it appears from the legislative history that HMOs were clearly the intended beneficiary of some of the provisions of the Act, e.g., those pertaining to programs for funding the development of HMOs, they were not the person "for whose especial benefit" other provisions, including § 300e–9, were created. American employees, not HMOs, were the "intended" beneficiaries of § 300e–9. That a provision incidentally benefits a putative plaintiff is insufficient to satisfy the "intended beneficiary" analysis.

With regard to the regulations governing standards for inclusion as a health care benefits option, 42 C.F.R. § 417.452(a), these provisions have been construed by courts and the administrative agency as benefitting not HMOs but the employing entity. An employer has *no* obligation under the statute *unless* the procedures proscribed in the regulations have been followed. *See Attanasio v. Div. of Compliance, U.S. DHHS,* 728 F.Supp. 812, 817 (D.Mass.1990) (emphasis added).

There is nothing in the pertinent language or legislative history of the Act to suggest that Congress intended to benefit HMOs. The plaintiff therefore does not have an enforceable right under § 1983 for violations of § 300e–9 of the federal HMO Act. Nonetheless, for the sake of thoroughness, I address the remaining factors used to determine whether plaintiff has an enforceable right within the meaning of § 1983.

Under the *Wilder* framework, if a plaintiff is the "intended beneficiary" of a statutory provision, the provision creates an enforceable right under § 1983 *unless* (1) it reflects merely a congressional preference for certain conduct rather than a binding obligation on the defendant and/or (2) the asserted interest is too vague and amorphous to be in the competency of the judiciary to enforce. *Wilder,* 496 U.S. at 508, 110 S.Ct. at 2517. In *Suter,* the Court considered these factors only as part of an overriding examination of congressional intent to determine whether Congress had "*unambiguously* confer[red] upon the child beneficiaries of the Act a right to enforce the [relevant] requirement...." 112 S.Ct. at 1367 (emphasis added).[11]

Plaintiff again relies on the unpublished report and recommendation in which the Tennessee magistrate judge concluded that "the federal HMO Act creates a specific right for a qualified HMO to be considered as an option in a covered employer's health benefits plan." [12] That report and recommendation, written prior to *Suter* and never adopted by a judge of the Middle District of

10. *See supra* fn. 2.

11. The *Suter* court did not address the "intended beneficiary" element of *Wilder* because it was clear that the children were the intended beneficiaries of the statute.

12. *See supra* fn 6 and accompanying text.

Tennessee, concludes, using the *Wilder* framework, that the right is enforceable by the HMO (the intended beneficiary) because (1) the language in the HMO Act imposes a binding obligation on employers to offer federally-qualified HMOs as a health care option insofar as the terms are mandatory, not precatory and (2) the right of HMOS to be considered as an option is not too vague for the courts to enforce.[13]

Defendant asserts that there is no "unambiguous" conferring of a right because nothing in the statute or legislative history *specifically* says plaintiff has such a right. This overstates the law. Defendant also argues that because the statute was enacted pursuant to Congress' spending power and imposes the obligation on employers only as a condition for receiving federal funds,[14] it imposes no binding obligation. This also overstates the law. In *Suter*, the Court stressed that obligations stated as conditions to the receipt of funds must be unambiguous to create enforceable rights, but did not hold that Congress' exercise of its appropriations power *never* creates enforceable rights. —— U.S. at ——, 112 S.Ct. at 1367. Section 300e–9 provides that to receive certain funds, the State and its political subdivisions *shall* include a federally-qualified HMO in the employees' health benefits plan. The language is mandatory, and I conclude that the requirements of § 300e–9 do impose a binding obligation on the State. Nevertheless, the obligation was not intended to benefit the putative plaintiff and therefore plaintiff has no cause of action under § 1983.

■■■ Defendant further asserts that no right is "unambiguously" conferred and/or the right is so vague it evades enforcement by the courts. Section 300e–9 of the Act provides that certain employers shall include in any health benefits plan the option of membership in a federally-qualified HMO. 42 U.S.C. § 300e–9(a)(1)(B). The legislative history suggests that Congress contemplated such inclusion only "if the HMO requests the inclusion". *See* 1976 U.S.Code Cong. & Ad-

min.News at 4324; *see also Attanasio,* 728 F.Supp. at 816. Regulations promulgated by the Secretary of Health and Human Services pursuant to his discretionary authority provide deadlines for federally-qualified HMOs to make such a request for inclusion. *See* 42 C.F.R. § 417.152(a). However, neither the statute nor the regulations specify ascertainable standards for distinguishing among several qualified HMOs when more than one requests inclusion.[15] Nor do they unambiguously require that, in the event only one federally-qualified HMO requests inclusion, the State must contract with that HMO. For these reasons, I conclude that the relevant provisions are so vague as to evade enforcement by the courts.

Accordingly,

IT IS ORDERED that the motion of Travelers Health Network of Louisiana for a preliminary injunction IS DENIED.

IT IS FURTHER ORDERED that Orleans Parish School Board's motion to dismiss Travelers' Complaint for failure to state a claim IS GRANTED.

---

13. *See supra* fn 6 at 38–43.

14. *See* 42 U.S.C. § 300e–9(a)(1)(B) and (g).

15. Indeed, plaintiff premises its demand that OPSB be enjoined to contract with it on the belief that no other federally-qualified HMO made a request to be offered by OPSB as a health benefit plan option for the 1993–94 year.