J. Gary DiLAURA, Individually and as President of Waterfront Homeowners Association of Western New York and James Lewis, Individually and as Vice-President of Waterfront Homeowners Association of Western New York and Barbara Custodi, Individually and as Secretary of Waterfront Homeowners Association of Western New York and Richard Rozicki, Individually and as Treasurer of Waterfront Homeowners Association of Western New York and John Arent, Thomas E. Arida, Lawrence Barclay, Ralph Barker, Harry Board, Patricia A. Boies, Thomas Bosz, Richard Bowen, Richard Brown, Stanley Brzezinski, Joseph D. Calato, Leonard Cannello, Jack Carpenter, William Carr, Miro Catipovic, Edward L. Charsley, Century Club, Edgar Cooper, Joseph J. Costa, Roy Cotton, Jon A. Culbert, Walter Czapla, John T. Daniels, Thomas DeRemer, Wilfred J. Des Jardin, Ralph Engstrom, Hugo Filax, Forbes, Philip Galmabacher, Donald Gannon, Arthur Gehrman, Robert Hackett, Robert Hadden, James J. Hallett, Robert P. Harper, Edgar E. Harris, John W. Hartman, Gladys M. Heinrich, John B. Henshaw, John Hess, Richard M. Hesson, William F. Hesson, Marcy Hilts, Dominic Hofert, Sheldon Holland, Gary Hunt, Violet Iadicicco, Stanley W. Jarosz, John W. Jaruszawicus, John J. Jaruszawicus, Dwight Jeeves, Robert Jensen, Arthur Jocoy, Ray Jones, David K. Jordan, Lawrence C. Jugle, Phillip Julias, James Kearney, Walter Kendzia, Robert J. Kiedrowski, James Kimbrough, Gail R. Klementowski, Kenneth V. Klementowski, Alex Kollwitz, Ed Konecki, Richard Kraus, Steve Kurthy, Frank Kustra, Richard LeClaire, Verna L. Learman, Gary Lewis, Norman Lichtenthal, Daniel Linenfelser, Raymond Lippens, Jack Livermore, Harvey R. Mack, Patrick MacKenna, Margaret Malican, Blue Water Marina, Placid Harbor Marina, Charles Markarian, Robert Marlin, James W. Martin, Ronald R. McMamee,

Daniel J. McMamee, Richard P. McBride, Paul McCarthy, Patrick M. McLaughlin, George McMurdo, Albert W. Merry, Louise E. Michaels, Jack Mikulski, Gustave Milkey, Arlene Mille, Charles F. Mohr, Richard Molnar, Jeffey L. Morgan, Richard G. Murray, Craig Neville, Jim Nicholas, Russell Nixon, Issac Pack, Arthur R. Page, Norman Parisi, Vincent Peri, Edward Pfohl, Robert Phillips, Kim Piccirelli, Ken Pieri, Bohdan Pikas, Richard H. Popp, Joel Radin, William Reagan, Elizabeth M. Reszel, Thomas Roberts, William Robinson, John Robinson, Richard Rozicki, Elmer C. Rumsey, Arthur Ruthowski, Edward L. Samulski, Allan F. Schreiner, Barbara C. Shedd, Wilfrid S. Sherk, William J. Simon, John R. Simon, Thomas Sliwa, Dennis Smith, Robin Smith, Joseph J. Smith, Richard Stange, Thomas J. Stedman, James Stephenson, Flora Stone, William C. Sundeen, Robert F. Swan, Dennis Szymanski, David Taylor, Louis W. Taylor, Patrick Tench, Douglas Tiebor, William E. Tisdale, Harry Tolli, Donald Tompkins, Aldo Urbani, Arthur Wade, Kenneth F. Wagner, Kenneth H. Walczak, Robert W. Weaver, Loretta L. Weaver, Norma Wedlake, Elsa Werstine, Thaddeus Weselak, Tony Wiatr, Donald Wilkinson, Frank Williams, LaSalle Yacht Club, Inc., William Young, Angelo Zino, Jr., and the Waterfront Homeowners Association of Western New York, Plaintiffs,

v.

POWER AUTHORITY OF the STATE OF NEW YORK, Defendant.

No. CIV–85–500E.

United States District Court, W.D. New York.

Feb. 27, 1987.

John P. Bartolomei, Niagara Falls, N.Y., for plaintiffs.

Irving C. Maghran, Buffalo, N.Y., for defendant.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

In this action the plaintiffs claim that the defendant ("PASNY") caused, through its operation and maintenance of an electrical power plant on the Niagara River, an ice jam which in turn caused flooding and damage to their property. They seek compensatory as well as punitive damages and protection from future damage to their real and personal property. The plaintiffs have moved for an order enjoining preliminarily PASNY from causing a repetition of flooding. Specifically, they seek to enjoin it from causing the Niagara River to flow in a reverse direction in an area adjacent to its water intake structures during river ice runs, to enjoin it from causing and/or maintaining an ice jam in the portion of the Niagara River immediately upstream from the intake structures and to require it to follow the ice control procedures detailed in the *Niagara River Ice Control Manual* (1984 Revision).[1]

A threshold question is whether this Court has jurisdiction over the claims asserted. In particular, significant questions have been raised concerning this Court's jurisdiction to grant the injunctive relief requested. The question of this Court's jurisdiction over the plaintiffs' claims for monetary damages is, however, more easily resolved.

In 1909 the United States and Canada agreed to the Boundary Waters Treaty of 1909, 36 Stat. 2448 ("the 1909 Treaty"). The purposes of the 1909 Treaty were to provide guidance for the use of boundary waters and to provide a forum for resolving questions which would thereafter arise regarding the use of such waters. *See Miller v. United States,* 583 F.2d 857, 860 (6th Cir.1978); *Soucheray v. Corps of En-*

---

1. The manual was prepared by Ontario Hydro and PASNY in 1962. It provides guidelines for personnel of the two power authorities with respect to ice conditions. *See* Affidavit of Alvin Hollmer, ¶ 15.

*gineers of U.S. Army,* 483 F.Supp. 352, 353 (W.D.Wis.1979). To oversee and implement the 1909 Treaty's provisions the pact established the International Joint Commission ("the IJC") which was to be composed of three members from each country and which was to approve and regulate the diversion, obstruction and use of boundary waters. The 1909 Treaty regulated the use of Niagara River water by establishing minimum flows of water over Niagara Falls.

A second treaty, the Treaty Between the United States and Canada Concerning Uses of the Waters of the Niagara River, TIAS 2130 ("the 1950 Treaty"), authorized greater water diversion from the Niagara River for power production and provided for the construction of remedial works upon the recommendation of and under the supervision of the IJC for the purpose of regulating water flow. As with the 1909 Treaty the 1950 Treaty regulates the amount of water which may be diverted from the Niagara River by prescribing certain minimum flows of water over Niagara Falls.

In 1957 Congress enacted the Niagara Redevelopment Act ("the Act"), 16 U.S.C. § 836 et seq. The Act directed the Federal Power Commission, succeeded in 1977 by the Federal Energy Regulatory Commission ("FERC"), to issue a license to PASNY "for the construction and operation of a power project with capacity to utilize all of the United States share of the water of the Niagara River permitted to be used by international agreement." 16 U.S.C. § 836(a). PASNY, a corporate municipal instrumentality of the State of New York, acquired its license under this Act.

■ The Act does not express any jurisdictional basis for the instant action. However, it states that any license issued shall include conditions "deemed necessary and required under the terms of the Federal Power Act." 16 U.S.C. § 836(b). Thus, reference may properly be made to the Federal Power Act, 16 U.S.C. § 791a et seq., which provides, in pertinent part, that

"Each licensee hereunder shall be liable for all damages occasioned to the property of others by the construction, maintenance, or operation of the project works or of the works appurtenant or accessory thereto, constructed under the license, and in no event shall the United States be liable therefor." 16 U.S.C. § 803(c).

That subsection imposes liability upon the licensee for damage caused to the property of others and clearly indicates that the United States as the licensor is not to be held liable. The statute also provides that

"The District Courts of the United States * * * shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder." 16 U.S.C. § 825p.

In this action the plaintiffs seek to impose upon PASNY the liability referenced in 16 U.S.C. § 803(c). This Court finds that 16 U.S.C. § 825p provides a statutory basis upon which the plaintiffs may seek damages for the losses incurred.

PASNY argues that the plaintiffs have already brought to FERC the complaints raised here and that FERC denied any relief. It claims that the plaintiffs are seeking a review of FERC's decision to deny relief and that such review is brought properly only before a United States Court of Appeals and that, at least insofar as they sought preliminary injunction, this Court has no jurisdiction.

■ The statute which PASNY invokes, 16 U.S.C. § 825*l*,[2] provides that a party aggrieved by an order issued by FERC in a proceeding under the Federal Power Act may apply for judicial review of such order only after applying for a rehearing before FERC and then only before a United States Court of Appeals. A federal district court has no jurisdiction upon which to review *orders* issued by FERC. *Halifax Cty. By*

2. *"l"* connotes a lower case L.

*& Through Bd. of Sup'rs v. Lever,* 718 F.2d 649, 652 (4th Cir.1983).

The administrative action which PASNY asserts precludes this Court from hearing the plaintiffs' action arose out of an application submitted by PASNY to FERC to amend PASNY's license to permit additional water diversion. A number of the plaintiffs had written to FERC in opposition to any amendment. *See* Exhibits 4–6 to Giutini's Affidavit in Opposition to Motion for Preliminary Injunction. Rather than considering the objections as part of the license amendment application, FERC construed the letters to be a "complaint" and directed PASNY to respond appropriately. Exhibit 8 to said affidavit. *See* 16 U.S.C. § 825e; 18 C.F.R. § 385.206(a). Upon review FERC concluded that "the Niagara Power Project was not the cause of the ice jamming and flooding in question." Exhibit 13 to said affidavit. More significantly for the purpose of assessing this Court's jurisdiction is FERC's conclusion that "[e]vidence and supporting data before the office indicates that the Licensee is complying with the terms and conditions of the license and there is no substantive indication that operation of the Niagara Power Project resulted in the ice jamming and flooding" cited in the letters. *Ibid.* FERC declined, at that time, to investigate further. No evidence has been submitted in this action indicating that there had been a request for a rehearing or any appeal to a United States Court of Appeals.

■ The Federal Power Act states that any person complaining that "anything done or omitted to be done by any licensee or public utility in contravention of the provisions of this chapter" may petition FERC. 16 U.S.C. § 825e. The crux of FERC's determination had been that PASNY had violated neither its license nor the Federal Power Act. It is only upon those determinations that the complainants may be held aggrieved within the terms of 16 U.S.C. § 825e and for the purposes of 16 U.S.C. § 825*l*. The plaintiffs' present claims for damages and for injunctive relief do not arise out of asserted violations of the Federal Power Act or of PASNY's license and thus are not precluded by 16 U.S.C. § 825*l*.

The difficult issue of this Court's jurisdiction *vel non* in light of two treaties, authority ceded to an international commission and authority ceded to FERC have not been addressed by the parties to this Court's satisfaction. However, on the basis of what has been presented I find it reasonable to conclude, at least for the purpose of resolving this motion, that jurisdiction exists upon which to order the injunctive relief sought.

The applicable treaties regulate the diversion, obstruction and use of boundary waters in the Niagara River. It is this Court's understanding that central to the treaties are the equal division of water rights between the United States and Canada and the requirement that sufficient water be left in the river so that specifically defined amounts of water flow over Niagara Falls at specified times. In furtherance of the treaties' provisions the IJC has developed tolerances for water depths at certain points in the river such as the Chippewa-Grass Island Pool.

The setting of minimum requirements for water flow over Niagara Falls, the setting of a range of permissible water depths at certain points in the river and the equal division of water rights leaves broad authority to the United States to regulate the use of its share of the water resource. By stating in its memorandum that "[t]o the extent that the United States retained the unilateral right to regulate the use and diversion of Niagara River water, it has delegated the exercise of those rights to the FERC," the defendant concedes that not all uses, diversions and obstructions of water which inevitably affect an international resource that is the subject of treaties necessarily violate the treaties involved or invade or usurp the IJC's authority.

■ The plaintiffs do not challenge the treaties, the IJC or any directives or decision of the IJC. Their concern is that PASNY, operating within its authority wrongfully caused damage to their proper-

ty and should be precluded from causing similar damage in the future. This Court finds no reason to question its jurisdiction to grant the relief requested despite the jurisdictional proximity of treaties and an international commission if that relief results only in the exercise of the United States's unilateral right to control its share of the water rights.

The relief sought by the plaintiffs is an order enjoining PASNY from causing the river to flow in a reverse direction, enjoining the creation or maintenance of an ice jam and prescribing a rigid utilization of a manual on ice control procedures. Although the ramification of granting such an order is unclear to this Court insofar as the relief might affect levels of water in the river and thus affect the international regulatory scheme, the evidence suggests that such relief would result in a decrease in water diverted for generating electricity and may result in an increase of water flowing over Niagara Falls. *See* Affidavit of Donald M. Liddell, a hydraulic engineer; Niagara River Ice Control Manual (1984 Revision) pp. 17, 18, 23, 24, 25, 27, 28, 37 & 39. Thus, rather than threatening the minimum water flow requirements under the treaties, the granting of the relief would result only in restricting PASNY's opportunities to reap the benefits of this water resource. Although many issues remain unclear to this Court, the treaties cited are not found to preclude this Court from exercising jurisdiction.

■ The defendant also claims that jurisdiction is lacking because, to the extent that the United States retained the unilateral right to regulate the use and diversion of Niagara River water, the exercise of that jurisdiction has been delegated to FERC. The Federal Power Act provides that licensees "shall conform to such rules and regulations as the Commission may from time to time prescribe for the protection of life, health, and property." 16 U.S.C. § 803(c). Although this Court recognizes that Congress has empowered FERC with broad powers and discretion to regulate and that FERC as a regulatory

commission presumably has expertise in this area, it is not clear that this Court lacks the power to prescribe conduct affecting life, health and property in an instance where FERC has failed to regulate. Again, although the issue of this Court's jurisdiction to issue the requested relief has not been satisfactorily addressed or resolved, jurisdiction is assumed for the purpose of resolving the present motion.

In moving for a preliminary injunction, the plaintiffs have the burden of establishing (1) irreparable harm and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the movant. *Kaplan v. Bd. of Educ. of City Sch. Dist. Etc.,* 759 F.2d 256, 259 (2d Cir.1985).

■ The plaintiffs' claim is that future flooding would result in substantial property damage. The claims do not rise beyond those which may be adequately redressed by money damages. Although they suggested at oral argument and in two affidavits that their physical safety may be endangered, such contention has not been shown to be more than mere speculation adopted in an *in terrorem* effort to show irreparable harm. These alleged threats of irreparable harm are remote and conjectural and are not judged to be imminent and, therefore, do not provide an appropriate basis for preliminary relief. *See State of New York v. Nuclear Reg. Com'n,* 550 F.2d 745, 755–756 (2d Cir.1977). Having failed to carry the burden of showing that money damages would be an inadequate remedy, the plaintiffs have failed to establish irreparable harm. *See KMW Intern. v. Chase Manhattan Bank, N.A.,* 606 F.2d 10, 14 (2d Cir.1979); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979).

In addition, this Court finds that the plaintiffs have not shown a likelihood of success on the merits. In support of their motion they have submitted the aforementioned Liddell affidavit wherein he concludes that PASNY's operations signifi-

cantly contributed to past flooding and may result in future flooding. Although cited for the contrary conclusion by FERC, this Court's review of the United States Corps of Engineers's *Upper Niagara River Ice Jam—January-February 1985* suggests that PASNY's operations contributed to the flooding. In opposition to the motion the defendant has submitted the affidavit of Alvin Hollmer, another hydraulic engineer, in which Liddell's conclusions are challenged. Also in support of the defendant's position is FERC's conclusion that PASNY had not been the cause of the ice jam and flooding.

■ The plaintiffs need not show an absolute certainty of success. *Abdul Wali v. Coughlin,* 754 F.2d 1015, 1025 (2d Cir. 1985). They need only show that the probability of success is greater than fifty percent. *Ibid. See Hamilton Watch Co. v. Benrus Watch Co.,* 206 F.2d 738, 740 (2d Cir.1953). Concededly, evaluation of the evidence submitted is a difficult task at this stage of the action. This Court, however, finds that the plaintiffs have failed to carry their burden of showing that they will likely prove that the defendant had been responsible for the 1985 ice jam, that the defendant had been responsible for causing flooding in the past, that any reverse flow caused or contributed to the creation of the ice jam and flooding, that unquestioned adherence to the *Niagara River Ice Control Manual* would have prevented the 1985 flood or that an order granting the relief requested would reasonably lead to the prevention of future flooding.

It is also found that the plaintiffs have not carried their burden of showing that the balance of hardships tips decidedly in their favor. This Court does not question that flooding in the past has inflicted substantial injury to property and that future flooding at some indeterminate future date may again cause substantial injury. Balanced most heavily against the speculative future injury which the plaintiffs may incur is the largely unknown effect this Court's order mandating relatively specific ice con-

trol procedures would have on any future efforts by the defendant to control ice and to prevent flooding.

Accordingly, it is hereby ORDERED that the plaintiffs' motion for a preliminary injunction is denied.