J. Gary DiLAURA, individually, and as president of Waterfront Homeowners Association of Western New York, et al.; James Lewis, individually, and as vice president of Waterfront Homeowners Association of Western NY; Barbara Custodi, individually, and as secretary of Waterfront Homeowners Association of Western NY; Richard Rozicki, individually, and as treasurer of Waterfront Homeowners Association of Western NY; John Arent; Thomas E. Arida; Lawrence Barclay; Ralph Barker; Harry Board; Patricia A. Boies; Richard Bowen; Stanley Brzezinski; Joseph D. Calato; Leonard Cannello; Jack Carpenter; William Carr; Miro Catipovic; Howard L. Charlsey; Century Club; Edgar Cooper; Joseph J. Costa; Roy Cotton; John A. Culbert; Walter Czapla; John T. Daniels; Thomas Deremer; William J. Desjardin; Ralph Engstron; Hugo Filax; Forbes; Philip Galmabacher; Donald Gannon; Arthur Gehrman; Robert Hackett; Robert Hadden; James J. Hallett; Robert P. Harper; Edgar E. Harris; John W. Hartman; Gladys M. Heinrich; John B. Henshaw; John Hess; Richard M. Hesson; William F. Hesson; Marcy Hilts; Dominic Hofert; Sheldon Holland; Gary Hunt; Violet Iadicicco; Stanley W. Jarosz; John W. Jaruszawicus; John J. Jaruszawicus; Dwight Jeeves; Robert Jensen; David K. Jordan; Lawrence C. Jugle; Philip Julias; James Kearney; Walter Kendzia; Robert J. Kiedrowski; James Kimbrough; Gail R. Klementowski; Kenneth V. Klementowski; Alex Kollwitz; Ed Konecki; Richard Kraus; Steve Kurthy; Frank Kustra; Richard LeClaire; Verna L. Learman; Gary Lewis; Norman Lichtenthal; Daniel Limenfelser; Raymond Lippens; Jack Livermore; Harvey R. Mack; Patrick MacKenna; Margaret Malican; Blue Water Marina; Placid Harbor Marina; Charles Markarian; Robert Marlin; James Martin; Ronald R. McMamee; Daniel J. McMamee; Richard P. McBride; Paul McCarthy; Patrick M. McLaughlin; George McMurdo; Louise E. Michaels; Jack Mikulksky; Gustave Milkey; Arlene Mille; Charles F. Mohr; Richard Molnar; Jeffrey L. Morgan; Richard G. Murray; Craig Neville; Jim Nicholas; Russell Nixon; Issac Pack; Arthur R. Page; Norman Parisi; Vincent Peri; Edwin Pfohl; Robert Phillips; Kim Piccirelli; Ken Pieri; Bohdan Pikas; Richard H. Popp; William Reagan; Elizabeth M. Reszel; Thomas Roberts; William Robinson; John Robinson; Richard Rozicki; Elmer C. Rumsey; Arthur Ruthowski; Edward L. Samulski; Allan F. Schreiner; Barbara C. Shedd; Wilfred S. Sherk; William J. Simon; John R. Simon; Thomas Sliwa; Dennis Smith; Robin Smith; Joseph J. Smith; Richard Stange; Thomas J. Stedman; James Stephenson; Flora Stone; William C. Sundeen; Robert F. Swan; Dennis Szymanski; David Taylor; Louis W. Taylor; Patrick Tench; Douglas Tiebor; William E. Tisdale; Harry Tolli; Donald Tompkins; Aldo Urbani; Arthur Wade; Kenneth F. Wagner; Kenneth H. Walczak; Robert W. Weaver; Loretta L. Weaver; Norma Wedlake; Elsa Werstine; Thaddeus Weselak; Tony Wiatr; Donald Wilkinson; Frank Williams; LaSalle Yacht Club, Inc.; William Young; Angelo Zino, Jr.; Waterfront Homeowners Association of Western NY, Plaintiffs–Appellants,

v.

POWER AUTHORITY of the STATE of NY, Defendant–Appellee.

No. 1833, Docket 92–7061.

United States Court of Appeals, Second Circuit.

Argued Aug. 12, 1992.

Decided Dec. 29, 1992.

John P. Bartolomei, Niagara Falls, NY (Paul A. Grenga, Bartolomei & Grenga, P.C., Niagara Falls, NY, of counsel), for plaintiffs-appellants.

Andrew Feldman, Buffalo, NY (Ann W. Herman, Damon & Morey, Buffalo, NY, of counsel), for defendant-appellee.

Before WINTER, MINER, and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge:

Plaintiffs appeal from a judgment of the United States District Court for the West-

ern District of New York, Richard J. Arcara, Judge, dismissing their claims for compensatory and punitive damages and injunctive relief under 16 U.S.C. § 803(c) (1988) and state negligence law.

Plaintiffs own land on the Niagara River shoreline. They sued the Power Authority of the State of New York ("PASNY") for damages and injunctive relief resulting from PASNY's ice control procedures on the River. The district court dismissed the action in its entirety, (1) finding that plaintiffs failed to state a claim under § 803(c); (2) holding that it lacked subject matter jurisdiction over plaintiffs' request for injunctive relief; and (3) declining to exercise supplemental jurisdiction (what used to be known as pendent jurisdiction) over plaintiffs' state-law negligence claims. We now affirm.

## BACKGROUND

The facts of this case are fully reported at 654 F.Supp. 641, 643–44 (W.D.N.Y.1987) (Elfvin, J.) [*"DiLaura I"*] and 786 F.Supp. 241, 243–45 (W.D.N.Y.1991) (Arcara, J.) [*"DiLaura II"*]. We summarize the salient facts relevant to this appeal.

The Niagara River connects Lake Erie and Lake Ontario. With various power-related facilities controlling the flow and elevation of the river, PASNY and its Canadian partner Ontario Hydro have transformed the Niagara River into a long "hydraulic canal" to produce electrical power. Two international treaties, related regulations, and a license issued by the Federal Energy Regulatory Commission ("FERC"),[1] govern PASNY's managed diversion of Niagara River waters.

The two international agreements between the United States and Canada are the Boundary Waters Treaty, Jan. 11, 1909, U.S.–Gr. Brit., 36 Stat. 2448 ("1909 Treaty"), and the Treaty Concerning Uses for the Waters of the Niagara River, Feb. 27, 1950, U.S.–Can., T.I.A.S. No. 2130, 694 ("1950 Treaty"). The 1909 Treaty established an International Joint Commission

("IJC"), giving it jurisdiction to regulate the diversion, obstruction, and use of boundary waters. *See* 1909 Treaty, arts. VII–XII, 36 Stat. at 2451–54; *see also Miller v. United States*, 583 F.2d 857, 860 (6th Cir.1978); *Soucheray v. Corps of Eng'rs of the United States Army*, 483 F.Supp. 352, 353 (W.D.Wis.1979). The 1909 Treaty also regulated the use of the Niagara River by establishing minimum water flows over Niagara Falls. *See* 1909 Treaty, art. V, 36 Stat. at 2450–51. The 1950 Treaty increased flow requirements and authorized the construction of various "remedial works" in the River to regulate the water flow over Niagara Falls. *See* 1950 Treaty, arts. II–IV, T.I.A.S. No. 2130 at 696–97.

In 1957, Congress enacted the Niagara Redevelopment Act ("NRA"), 16 U.S.C. §§ 836–836a (1988), directing FERC to issue a license to PASNY "for the construction and operation of a power project with capacity to utilize all of the United States share of the water of the Niagara River permitted to be used by international agreement." *Id.* § 836(a). The license for the Niagara Project specifically reserved to FERC the right to regulate PASNY's use of the Niagara River waters for the protection of life, health and property. *Id.* § 803(c).

All decisions regarding River water diversions for power production, operation of the Control Structure—the principal "remedial work"—and ice control operations require close coordination between PASNY and Ontario Hydro. In particular, the two power entities have joint development procedures, described in the *Niagara River Ice Control Manual*, for minimizing the effect of ice on the River flow and the operation of the Control Structure.

There was a severe winter storm on the Upper Niagara River in early 1985. Plaintiffs, who own property in New York along the East Channel of the Niagara River, allege that PASNY over-reacted to this event by diverting too much water into the Niagara Project power intakes, thus caus-

---

1. The Federal Power Act ("FPA"), 16 U.S.C. §§ 791a–828c (1988 & Supp.1990), originally created the Federal Power Commission ("FPC"). *See* 16 U.S.C. § 792 (1988). FERC succeeded the FPC in 1977. For clarity, we identify all FPC actions as FERC actions.

ing the River to flow in a reverse direction. This, plaintiffs claim, resulted in an ice jam with consequent flooding and ice damage to plaintiffs' property. Asserting claims under 16 U.S.C. § 803(c) and state-law negligence, plaintiffs sued in the Western District in April 1985, for compensatory and punitive damages and injunctive relief. PASNY answered that the unpredictable weather along the Niagara River caused the ice jam, and that the situation would have been much worse if PASNY had not intervened to control the storm damage.

Plaintiffs moved for a preliminary injunction to prevent PASNY from causing more flooding. In a Memorandum and Order dated February 26, 1987, the district court (per Judge Elfvin) denied the motion. *DiLaura I*, 654 F.Supp. 641. Although Judge Elfvin agreed that § 803(c) creates a federal claim and that the district court had jurisdiction to grant injunctive relief, he denied the motion because plaintiffs failed to make the required showing of irreparable harm, a likelihood of success, and a balance of hardships tipping decidedly in their favor. *DiLaura I*, 654 F.Supp. at 646–47.

The case was then transferred to Judge Arcara in April 1989. At the final pre-trial conference in April 1991, Judge Arcara, on his own motion, raised the issue of subject matter jurisdiction. The issue was then briefed and argued. By Memorandum and Order dated December 2, 1991, the court dismissed the complaint. *DiLaura II*, 786 F.Supp. 241.

With respect to plaintiffs' § 803(c) claim, Judge Arcara found that § 803(c) does not create a federal claim and that plaintiffs' complaint therefore failed to state a claim upon which relief could be granted. He also dismissed plaintiffs' request for injunctive relief for lack of subject matter jurisdiction under the "political question" doctrine and the exhaustion requirement. Acknowledging the interests of federalism and comity, the court also declined to exercise supplemental jurisdiction over plaintiffs' state-law negligence claims. *DiLaura II*, 786 F.Supp. at 255.

## DISCUSSION

### A. *Law of the Case*

Before considering the merits of this case, we raise, *sua sponte*, a threshold issue—whether Judge Arcara's conclusions of law were barred by the "law of the case" doctrine.

The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Liona Corp. v. PCH Assocs. (In Re PCH Assocs.)*, 949 F.2d 585, 592 (2d Cir.1991) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816, 108 S.Ct. 2166, 2177, 100 L.Ed.2d 811 (1988)); *see also* 1B James W. Moore, Jo D. Lucas & Thomas S. Currier, *Moore's Federal Practice* ¶ 0.404[1], at 117 (1991) ("Under the doctrine of law of the case, a decision on an issue of law made at one stage of a case becomes a binding precedent to be followed in successive stages of the same litigation.").

This "doctrine is admittedly discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment." *Virgin Atl. Airways v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 67, 121 L.Ed.2d 34 (1992); *see also Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983) ("Law of the case directs a court's discretion, it does not limit the tribunal's power."). As we have noted, "[t]he major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways,* 956 F.2d at 1255 (quoting 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4478, at 790 (1981)) [hereinafter *Federal Practice & Procedure* ].

Deciding to reconsider Judge Elfvin's finding concerning plaintiffs' § 803(c) claim, Judge Arcara emphasized that the finding was made upon a motion for a preliminary injunction; and, he concluded

that "the issue of whether § 803(c) creates a federal cause of action for damages was not directly before him and his holding in that regard was merely *dictum.*" 786 F.Supp. at 250. Without deciding whether the finding was holding or dictum, we approve the result, recognizing that "[t]he decision of both the trial and appellate court on whether to grant or deny a temporary injunction does not preclude the parties in any way from litigating the merits of the case." 11 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2962, at 630–31 (1973). Thus, the preliminary and summary nature of Judge Elfvin's ruling counsels restraint in a strict application of law of the case.

In revisiting Judge Elfvin's finding concerning jurisdiction over plaintiffs' request for an injunction, the court expressed the view that "[i]t is obvious from his decision that Judge Elfvin had serious questions concerning the Court's jurisdiction" but "deemed it prudent ... to assume jurisdiction...." *DiLaura II,* 786 F.Supp. at 252. Because subject matter jurisdiction is particularly suited for reconsideration, see, e.g., *Federal Practice & Procedure* § 4478, at 799, in this case, Judge Arcara properly and prudently revisited the earlier summary ruling on so basic a question.

In any event the doctrine of law of the case "permits a change of position if it appears that the court's original ruling was erroneous." *Kinsman Transit Co. v. City of Buffalo,* 388 F.2d 821, 825 n. 9 (2d Cir.1968); accord *Arizona v. California,* 460 U.S. 605, 103 S.Ct. 1382, 75 L.Ed.2d 318. Recognizing that "Judge Elfvin did not have the benefit, at that time, of Judge Ginsberg's [persuasive] decision in *South Carolina Public Serv. Auth. v. FERC* [850

F.2d 788 (D.C.Cir.1988)]," 786 F.Supp. at 250, the court articulated a legitimate ground to support its reconsideration. Because Judge Arcara's reasons for revisiting Judge Elfvin's prior rulings were "cogent" and "compelling," *Doe v. New York City Dep't of Social Servs.,* 709 F.2d 782, 789 (2d Cir.), cert. denied, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983), we find no error in the court's rejection of the law of the case doctrine in this case.

**B.  *The § 803(c) Claim***

■ Plaintiffs argue that 16 U.S.C. § 803(c)[2] creates a private claim and, therefore, the district court has subject matter jurisdiction over their claim for compensatory and punitive damages, and injunctive relief, under 16 U.S.C. § 825p.[3]

In determining whether § 803(c) gives a private litigant a federal claim, the most important inquiry is whether Congress intended to create such a right of action. *Suter v. Artist M.,* — U.S. ——, 112 S.Ct. 1360, 1370, 118 L.Ed.2d 1 (1992); *Karahalios v. National Fed'n of Fed. Employees, Local 263,* 489 U.S. 527, 532–33, 109 S.Ct. 1282, 1286–87, 103 L.Ed.2d 539 (1989); see *Health Care Plan, Inc. v. Aetna Life Ins. Co.,* 966 F.2d 738, 740 (2d Cir.1992). Unless congressional intent is clearly stated or can reasonably be inferred, "the essential predicate for implication of a private remedy simply does not exist." *Karahalios,* 489 U.S. at 533, 109 S.Ct. at 1286 (quoting *Thompson v. Thompson,* 484 U.S. 174, 179, 108 S.Ct. 513, 516, 98 L.Ed.2d 512 (1988)). To divine Congress' intent on this issue, we apply the four-pronged test of *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).[4] As we have noted, that test has

**2.** Section 803(c) of the Federal Power Act provides:

Each licensee hereunder shall be liable for all damages occasioned to the property of others by the construction, maintenance, or operation of the project works or of the works appurtenant or accessory thereto, constructed under the license, and in no event shall the United States be liable therefor.

16 U.S.C. § 803(c) (1988).

**3.** Section 825p provides in pertinent part:

The District Courts of the United States ... shall have exclusive jurisdiction ... of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, [the FPA].

16 U.S.C. § 825p (1988).

**4.** The four factors of the *Cort* analysis are:

First, is the plaintiff one of the class for whose *especial* benefit the statute was enacted ...—that is, does the statute create a federal right in favor of the plaintiff? Second, is

been "refocused" by a series of Supreme Court decisions to emphasize the centrality of the second factor—congressional intent—and to treat the remaining factors "only as proxies for legislative intent." *Health Care Plan,* 966 F.2d at 740; *see, e.g., Karahalios,* 489 U.S. at 532–33, 109 S.Ct. at 1285–86; *Thompson,* 484 U.S. at 179, 108 S.Ct. at 516; *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575–76, 99 S.Ct. 2479, 2488–89, 61 L.Ed.2d 82 (1979). Where, as here, "the scope of a statutory provision is not made crystal clear by the language of the provision, it is appropriate to turn to the legislative history of the statute" in order to determine congressional intent. *Berger v. Heckler,* 771 F.2d 1556, 1571 (2d Cir.1985).

Judged against these guideposts, we agree with the district court that neither the statutory language nor the legislative history of § 803(c) reveals any congressional intent to create a new private cause of action against FERC licensees. There is nothing in the legislative history to contradict the district court's assertion that "Congress simply wanted to preserve the right of injured property owners to bring actions for damages against licensees in state court under traditional state tort law, and to shield the United States against liability." 786 F.Supp. at 249.

A perusal of the original House version of the bill reveals an intent to preserve existing state liability laws:

> No license hereunder shall have the effect of relieving the licensee from liability for any injury or damages occasioned by the construction, maintenance, or operation of said project works; and the United States shall in no event be liable therefor.

H.R.Rep. No. 715, 65th Cong., 2d Sess. § 10(c), at 6 (1918). The floor debate on the FPA also indicates that property damage caused by licensees was to be deter-

mined by reference to state law. *See* 56 Cong. Rec. 9913–14 (daily ed. Sept. 3, 1918). Indeed, after a detailed analysis of the statute, the Supreme Court concluded that "[t]he Act leaves to the states their traditional jurisdiction subject to the admittedly superior right of the Federal Government." *First Iowa Hydro–Elec. Coop. v. Federal Power Comm'n,* 328 U.S. 152, 171, 66 S.Ct. 906, 915, 90 L.Ed. 1143 (1946).

Most courts considering this issue have concluded that § 803(c) does not create an independent federal right of action. *See, e.g., South Carolina Pub. Serv. Auth. v. FERC,* 850 F.2d 788, 795 (D.C.Cir.1988) (finding that § 803(c) does not create an independent federal cause of action, but simply preserves existing state tort law with its own rules of liability for damages caused by licensees); *Pike Rapids Power Co. v. Minneapolis, St. P. & S.S.M. Ry. Co.,* 99 F.2d 902, 911–12 (8th Cir.), *cert. denied,* 305 U.S. 660, 59 S.Ct. 362, 83 L.Ed. 428 (1938); *Beaunit Corp. v. Alabama Power Co.,* 370 F.Supp. 1044, 1051 (N.D.Ala.1973); *Key Sales Co. v. South Carolina Elect. & Gas Co.,* 290 F.Supp. 8, 23 (D.S.C.1968), *aff'd,* 422 F.2d 389 (4th Cir.1970) (per curiam); *Alabama Power Co. v. Smith,* 229 Ala. 105, 155 So. 601, 604 (1934); *Rice Hope Plantation v. South Carolina Pub. Serv. Auth.,* 216 S.C. 500, 59 S.E.2d 132, 140–42 (1950), *overruled on other grounds, McCall v. Batson,* 285 S.C. 243, 329 S.E.2d 741 (1985). *But see Seaboard Air Line R.R. v. County of Crisp,* 280 F.2d 873, 875–76 (5th Cir.1960) ("It seems to us unlikely that the Congress intended by the language it used to do no more than to disclaim liability on the part of the United States for the acts of the licensee."), *cert. denied,* 364 U.S. 942, 81 S.Ct. 460, 5 L.Ed.2d 373 (1961); *DiLaura I,* 654 F.Supp. at 644 (holding that § 825p provides a statutory' basis for plaintiffs

there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?
... Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? ... And finally, is the cause of action one traditionally

relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?
*Cort,* 422 U.S. at 78, 95 S.Ct. at 2088 (1975) (internal quotation marks omitted) (citations omitted).

seeking to impose on PASNY the liability referenced in § 803(c)).

Accordingly, we adopt the majority rule and conclude that the district court did not err in finding that plaintiffs' cause of action under § 803(c) failed to state a claim upon which relief could be granted.

## C. *Appellants' Request for Injunctive Relief*

Plaintiffs argue that, even if there is no private damage remedy under § 803(c), the district court would still have jurisdiction to issue an injunction under § 825p. Although § 825p might be read to support this distinction, we reject the contention and hold, as did the district court, that injunctive relief is not available because of the exhaustion requirement.

■ Failure to exhaust administrative remedies permits a court to dismiss the action because no subject matter jurisdiction exists. *See* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350, at 194–96 (2d ed. 1990 & Supp.1992) and the cases cited therein. This is especially true where Congress has designed an extensive administrative procedure to protect the interests of potential plaintiffs.

■ The FPA endowed FERC with full regulatory authority over projects such as the Niagara Project, entrusting "a broad subject-matter to administration by the [FERC], subject to Congressional oversight, in the light of new and evolving problems and doctrines." *Niagara Mohawk Power Corp. v. Federal Power Comm'n*, 379 F.2d 153, 158 (D.C.Cir.1967). This authority includes the right to issue licenses for the construction and operation of hydroelectric projects. *See* 16 U.S.C. § 797(e). In this case, PASNY is licensed by FERC and must obey FERC's rules and regulations prescribed for the protection of life, health, and property. *See id.* § 803(c).

Dissatisfied with PASNY's ice control procedures, appellants have filed a complaint in the district court, seeking an injunction to compel PASNY to follow the procedures outlined in the *Niagara River Ice Control Manual*. The threshold issue is whether the district court has jurisdiction over this action.

In enacting the FPA, Congress established a system for dealing with complaints to FERC, *see* 16 U.S.C. §§ 825e–h, and created a special procedure to review FERC's action or inaction. Under this procedure, the complainant must first appeal the FERC action to the full commission, 18 C.F.R. § 385.904 (1992), and then request a rehearing, *id.* § 385.713. Only then, after exhausting all administrative remedies, may the complainant seek judicial review. 16 U.S.C. § 825*l*; *see City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 336, 78 S.Ct. 1209, 1218, 2 L.Ed.2d 1345 (1958) ("Congress in [§ 825*l* ] prescribed the specific, complete and exclusive mode for judicial review of [FERC's] orders.")

Appellants contend that they are free from these administrative constraints because they are not seeking to review anything but only to compel PASNY to adhere to its own procedures. While this argument has a certain semantic appeal, we reject it as simply too facile.

In *California Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908 (9th Cir. 1989), the Ninth Circuit rejected a similarly strained theory, concluding that "appellants seek, through careful pleading, to avoid the strict jurisdictional limits imposed by Congress. . . . and we do not believe that the jurisdictional remedy prescribed by Congress hangs on the ingenuity of the complaint." *Id.* at 911–12. Likewise, appellants in this case attempt to fashion an independent claim against PASNY, seeking to escape FERC's jurisdiction over its licensees and its administrative proceedings.

We agree with the district court that FERC in the first instance "has the power and the expertise to decide if the license was violated or if the current operating procedures should be changed." *DiLaura II*, 786 F.Supp. at 253. Accordingly, we find no error in the district court's conclusion that it lacked jurisdiction to review

appellants' claims because they failed to exhaust FERC's administrative remedies.[5]

### D. *Supplemental Jurisdiction*

Both parties contend that the district court erred by not exercising supplemental jurisdiction over the appellants' state law negligence claim after it decided to dismiss the federal § 803(c) claim. The parties contend that the court should address this supplemental state law claim in the interests of judicial economy and fairness. We disagree.

■ Once a district court has determined that the original federal claim should be dismissed, its decision to relinquish jurisdiction over a supplemental state claim will be reversed only for abuse of discretion. *See Finz v. Schlesinger*, 957 F.2d 78, 83 (2d Cir.) (citing *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988)), *cert. denied*, — U.S. —, 113 S.Ct. 72, 121 L.Ed.2d 38 (1992); *Mayer v. Oil Field Sys. Corp.*, 803 F.2d 749, 757 (2d Cir.1986). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ.*, 484 U.S. at 350 n. 7, 108 S.Ct. at 619 n. 7; *see also Castellano v. Board of Trustees of the Police Officers' Variable Supplements Fund*, 937 F.2d 752, 758 (2d Cir.) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)) (" 'if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.' "), *cert. denied*, — U.S. —, 112 S.Ct. 378, 116 L.Ed.2d 329 (1991).

■ Here, the district court stated that "the interests of federalism and comity strongly support dismissal of the state law negligence claim" because "the legislative history of the FPA clearly establishes that Congress was determined not to infringe the traditional jurisdiction of the States in the areas of property rights and tort liability." 786 F.Supp. at 254. Furthermore, we have held that the parties' judicial economy argument is not dispositive. *See Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 564 (2d Cir.) (citation omitted) ("The judicial economy factor should not be the controlling factor, and it may be appropriate for a court to relinquish jurisdiction over pendent claims even where the court has invested considerable time in their resolution."), *cert. denied*, — U.S. —, 111 S.Ct. 2829, 115 L.Ed.2d 998 (1991), *appeal after remand, In re Ivan F. Boesky Secur. Litigation*, 957 F.2d 65 (2d Cir.1992).

Accordingly, we find that the district court did not abuse its discretion in relinquishing jurisdiction over the supplemental state law negligence claim.

### CONCLUSION

To sum up: We find that the district court properly dismissed plaintiffs' federal claim for failure to state a claim upon which relief can be granted. Further, the court properly dismissed plaintiffs' request for injunctive relief for lack of subject matter jurisdiction. Finally, we affirm the court's decision not to exercise supplemental jurisdiction over plaintiffs' state law negligence claims.

Accordingly, the judgment of the district court is affirmed.

WINTER, Circuit Judge, concurring:

I concur in the result. I also concur in the discussion of the Section 803(c) claim and of the non-exercise of supplemental jurisdiction over the state claims. I do not concur in the discussion of the law of the case doctrine or of injunctive relief under Section 825p.

Whether or not the district court should have decided otherwise based on the law of the case doctrine matters not at this stage

---

5. Because we hold the district court *lacked* jurisdiction, we decline to consider the implications of the political question doctrine in this case, or whether FERC had primary jurisdiction over the issues raised.

because we, as an appellate court, must resolve the case on the merits. *See In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991) (" '[A] district court's adherence to law of the case cannot insulate an issue from appellate review.' " (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817, 108 S.Ct. 2166, 2178, 100 L.Ed.2d 811 (1988))). Law of the case would be relevant only if this court had rendered an earlier decision relating to the merits. The doctrine being irrelevant, I see no reason to discuss it. I hasten to add that I find nothing mischievous in the opinion's discussion of law of the case other than the implication that the doctrine is an issue raised by this appeal.

However, the opinion's discussion of the claim for injunctive relief pursuant to Section 825p may have the potential for mischief. Most notably, the opinion does not identify the substantive basis for this claim other than to imply that Section 825p itself may provide that basis. However, Section 825p merely empowers district courts with jurisdiction "to enforce any liability ... or to enjoin any violation of" the Federal Power Act. 16 U.S.C. § 825p. In short, it merely empowers district courts to entertain actions authorized by other provisions of the Act. *See Touche Ross & Co. v. Redington*, 442 U.S. 560, 576–77, 99 S.Ct. 2479, 2489–90, 61 L.Ed.2d 82 (1979) (stating that provision empowering district courts to entertain actions brought under Securities Exchange Act of 1934 does not create substantive rights).

Indeed, appellants have not argued otherwise. Their brief thus summarizes their claims as follows:

> Stated as concisely as possible, the Plaintiffs–Appellants claim that they have been damaged by the Defendant–Respondent's construction, operation and maintenance of its projects along the Niagara River; and, that under various theories of tort liability (including a federal tort

theory of liability under Section 803(c)), the Defendant–Respondent is liable to the Plaintiffs–Appellants for the damages incurred; ... and, finally, the Defendant–Respondent should be enjoined from conducting itself in the future in the same manner that it did in 1985, which resulted in damages to the Plaintiffs–Appellants. Applying the Niagara Redevelopment Act requirements that FERC licensees comply with the provisions of the Federal Power Act (16 USC Section 836(b)) and, applying the Federal Power Act provisions (set forth at 16 USC Section 803(c)) which requires licensees to pay for such damages; and, applying the provisions of the Federal Power Act set forth at 16 USC Section 825(p) [sic] establishing the District Court's jurisdiction to hear claims arising under such circumstances, it is perfectly clear that in the case at bar, the District Court has complete subject matter jurisdiction to hear the Plaintiffs–Appellants' instant claims and to ultimately determine said claims accordingly.

Brief of Appellants at 14.

Section 825p thus provides jurisdiction in the district court for both the appellants' damage action and their claim for injunctive relief. However, "[t]he source of plaintiffs' rights must be found, if at all, in the substantive provisions of the [Act] which they seek to enforce, not in the jurisdictional provision." *Touche Ross*, 442 U.S. at 577, 99 S.Ct. at 2490. The substantive basis for appellants' damage claim is clearly Section 803(c). The substantive basis for the claim for injunctive relief is simply never identified. If Section 803(c), which expressly states that licensees may be liable for damages to private parties, is insufficient to support a federal damage claim under the Act, there surely is no federal private right of action for injunctive relief to be inferred from the Act's silence.[1]

---

1. Confusion may exist because Point II of appellants' brief is entitled:

   THE DISTRICT COURT HAS JURISDICTION OVER PLAINTIFFS–APPELLANTS' REQUEST FOR INJUNCTIVE RELIEF IN THAT THE NATURE OF PLAINTIFFS–APPEL-

   LANTS' ACTION DOES NOT BRING IT UNDER THE EXCLUSIVE JURISDICTION OF EITHER FERC OR IJC.

   Brief of Appellants at 45.

   However, the argument that follows is simply a rebuttal of appellee's argument that the dis-

Nor do I agree with my colleagues that the claim for injunctive relief fails because of the exhaustion doctrine. A dismissal based on exhaustion implies that a plaintiff may have a valid claim, but that it has been brought prematurely. The claim for injunctive relief is not premature; it simply has no basis in the Act. Even if appellants were to exhaust all proceedings against FERC, therefore, they would, in my view, still not be able to bring an action in the district court against the Power Authority for an injunction under Section 825p.[2]

pute is within the exclusive jurisdiction of FERC or the International Joint Commission. It does not cite, much less rely upon, Section 825p. Moreover, the argument is not limited to the claim for equitable relief but explicitly supports a claim for damages under Section 803(c). *Id.* at 51.

2. Of course, appellants may begin a proceeding before FERC, and, if they fail to get relief, may petition for review to a court of appeals pursuant to Section 825*l*. This has nothing to do with an action under Section 825p, however.